In re TRANSWESTERN PUBLISHING
COMPANY, L.L.C., Transwestern
Holding, L.P., and Bill Lexa.

No. 2–02–316–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 30, 2002.

Hallet & Perrin, P.C., C. Christian Frederiksen, Jr., Dallas, for Relators.

B.C. Cornish, Fort Worth, for Real Party In Interest.

Panel A: CAYCE, C.J.; DAY and LIVINGSTON, JJ.

## OPINION

SAM DAY, Justice.

### I. INTRODUCTION

Relators TransWestern Publishing Company, L.L.C., TransWestern Holding L.P., and Bill Lexa filed a petition for writ of mandamus and a motion for emergency relief on September 10, 2002, requesting that we order the trial court to grant their motion to compel real party in interest Carol Wilkerson to submit to a mental examination by their expert psychologist. Trial was scheduled for Monday, September 16, 2002. We granted relators' motion for emergency relief, stayed all the proceedings in the trial court, and requested a response from Wilkerson. We received Wilkerson's response on September 11, 2002, and relators' reply on September 30, 2002. Having reviewed the petition, the response, and the reply, we conditionally grant relators' petition for writ of mandamus.

### II. FACTUAL BACKGROUND

Wilkerson was terminated from her employment with relators in September 1999. On July 26, 2001, she filed a lawsuit against relators for sexual discriminatory conduct and retaliatory discharge. In her pleadings, she claims that as a result of relators' conduct, she has suffered mental anguish in the past and will continue to suffer mental anguish in the future. She also requests exemplary damages for these injuries.

In her responses to discovery, Wilkerson identified various health care providers and a psychologist who have treated her for mental anguish. She also designated a physician and the psychologist to testify as expert witnesses regarding her mental anguish. Dr. Brian Ruteledge, the physician, will testify to the "medical treatment [he provided] relating to physical and psychological problems caused by [Wilkerson's] work environment and discharge." Dr. Patrick O'Malley, the psychologist, will testify regarding the "mental anguish suffered by [Wilkerson] as a result of the working conditions and the discharge and reasonable medical expenses related to her treatment." Wilkerson also stated in discovery that as a result of her mental anguish, she was not able to work from September 1999 to January 2000 (four months) and from October 2000 to June 2001 (eight months). In other words, Wilkerson's initial mental anguish kept her from working for four months, dissipated for about nine months, and then came back and kept her from working for another eight months.

On August 2, 2002, relators filed a motion to compel Wilkerson to submit to a mental examination by their designated expert psychologist. A hearing was held on the motion on August 16, and the trial court denied the motion that day. A written order on the motion was entered on August 20. The trial court did not specify the basis for its ruling.

### III. STANDARD OF REVIEW

In deciding whether a writ of mandamus is appropriate, we recognize that mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex.2000) (orig.proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error

of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding).

With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839–40. This burden is a heavy one. *Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994) (orig.proceeding).

Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.*

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding). In making the determination of whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *Id.* The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence. *See* Tex.R. Civ. P. 192.3(a). However, this broad grant is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex.1998) (orig.proceeding).

Appellate courts will not intervene to control incidental trial court rulings when an adequate remedy by appeal exists. *Walker*, 827 S.W.2d at 840. An appellate remedy is not inadequate merely because it might involve more expense or delay than obtaining a writ of mandamus. *In re Ford Motor Co.*, 988 S.W.2d 714, 722–23 (Tex.1998) (orig.proceeding); *Walker*, 827 S.W.2d at 842. A party will not have an adequate remedy by appeal: (1) when the appellate court would not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *Ford*, 988 S.W.2d at 721; *Walker*, 827 S.W.2d at 843.

### IV. COMPELLING A MENTAL EXAMINATION

We first determine whether the trial court abused its discretion in denying relators' motion to compel Wilkerson to submit to a mental examination. Texas Rule of Civil Procedure 204.1 sets forth the requirements a party must meet in order to compel a mental examination. Tex.R. Civ. P. 204.1. Under the rule, a party may

> no later than 30 days before the end of any applicable discovery period— move for an order compelling another party to:
>
> (1) submit to a physical or mental examination by a qualified physician or a mental examination by a qualified psychologist; or

(2) produce for such examination a person in the other party's custody, conservatorship or legal control.

. . . .

. . . . The court may issue an order for examination *only for good cause shown and* only in the following circumstances:

(1) when the mental or physical condition (including the blood group) of a party, or of a person in the custody, conservatorship or under the legal control of a party, is in controversy; or

(2) except as provided in Rule 204.4, an examination by a psychologist may be ordered when the party responding to the motion has designated a psychologist as a testifying expert or has disclosed a psychologist's records for possible use at trial.

TEX.R. CIV. P. 204.1(a), (c) (emphases added).

In *Coates v. Whittington,* the Supreme Court of Texas, in interpreting rule 204.1's predecessor, rule 167a, held that before a trial court may order a party to submit to a mental examination, the movant must show (1) that the party's mental condition is in controversy and (2) that there is good cause for a compulsory mental examination. 758 S.W.2d 749, 751 (Tex.1988) (interpreting TEX.R. CIV. P. 167a(a) (Vernon 1976, repealed. 1998, now TEX.R. CIV. P. 204.1)); *see also In re Doe,* 22 S.W.3d 601, 605 (Tex.App.-Austin 2000, orig. proceeding). The court stated that absent an affirmative showing of both prongs of the test, a trial court could not order a mental examination. The two prongs of the test could not be met "by mere conclusory allegations of the pleadings—nor by mere relevance to the case." *Coates,* 758 S.W.2d at 751.

 In meeting the "in controversy" prong, the court stated that "[a] rou-tine allegation of mental anguish or emotional distress does not place the party's mental condition in controversy. The plaintiff must assert mental injury that exceeds the common emotional reaction to an injury or loss." *Id.* at 753. Further, "sweeping examinations of a party who has not affirmatively put his mental condition in issue may not be routinely ordered simply because the party brings a personal injury action." *Id.* at 751 (citing *Schlagenhauf v. Holder,* 379 U.S. 104, 121, 85 S.Ct. 234, 244, 13 L.Ed.2d 152 (1964)). A mental injury that warrants a psychological evaluation is distinguishable from emotional distress that accompanies a personal injury action. *Id.*

The requirement of good cause for a compulsory mental examination, on the other hand, could be satisfied only when the movant proved three elements. First, the examination had to be relevant to issues that were genuinely in controversy in the case and it had to be shown that the examination would produce, or would likely lead to, relevant evidence. *Id.* Second, a party had to show a reasonable nexus between the condition in controversy and the examination sought. *Id.* at 753. Finally, a movant had to demonstrate that it was not possible to obtain the desired information through means that were less intrusive than a compelled examination. *Id.*

Although the Supreme Court of Texas stated that these factors had to be met before a mental examination could be compelled, it also stated that if a plaintiff intended to use expert medical testimony to prove his or her alleged mental condition, that condition was placed in controversy and the defendant would have good cause for an examination. *Id.* In other words, the mere fact that a party designated a medical expert to testify regarding his mental health was enough to meet both

the "in controversy" and "good cause" factors needed to compel a mental examination. Several courts have relied on this portion of the *Coates* opinion to hold that the trial court erred in denying a motion to compel mental examination. *See Laub v. Millard*, 925 S.W.2d 363, 365 (Tex.App.-Houston [1st Dist.] 1996, orig. proceeding) ("Because Mary intends to use expert medical testimony from Dr. Pesikoff and Justice to prove her alleged incompetence, she has placed her mental condition in controversy and given Levi good cause for an examination under rule 167a."); *Exxon Corp. v. Starr*, 790 S.W.2d 883, 887–88 (Tex.App.-Tyler 1990, orig. proceeding) (holding where real party in interest's expert alleged that continuing psychiatric, psychological, and neuropsychological treatment would be necessary and real party in interest had designated mental experts to testify regarding these needs, relator was entitled to mental examination); *Sherwood Lane Assocs. v. O'Neill*, 782 S.W.2d 942, 944–45 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding) (holding good cause existed to warrant independent mental examination because real party in interest's responses to interrogatories designated expert witnesses to prove minor's mental condition); *see also Doe*, 22 S.W.3d at 607 (denying mental examination, in part, because Doe "has not designated any psychiatrist or psychologist as an expert witness"); *cf. Beamon v. O'Neill*, 865 S.W.2d 583, 586 (Tex. App.-Houston [14th Dist.] 1993, orig. proceeding) (holding good cause for examination existed because real party in interest "had placed his own physical condition in controversy, and intended to call medical expert witnesses to establish his injuries").

The *Coates* court, however, was interpreting former Texas Rule of Civil Procedure 167a, which stated:

> When the mental ... condition ... of a party ... *is in controversy,* the court in which the action is pending may order the party to submit to a ... mental examination by a physician.... The order may be made only on motion for *good cause shown* and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

TEX.R. CIV. P. 167a(a) (emphases added) (Vernon 1976, repealed 1998, now TEX.R. CIV. P. 204.1). Rule 204.1, on the other hand, requires a showing of good cause *and* either proof of the "in controversy" element *or* proof that the party to be examined has designated a psychologist to testify or has disclosed a psychologist's records for possible use at trial. TEX.R. CIV. P. 204.1(c). Thus, under rule 204.1, even if the person to be examined has designated a psychologist to testify regarding her mental condition, the party seeking the examination must still demonstrate "good cause" for the examination. "Good cause" is not assumed merely because a psychologist has been appointed to testify as an expert regarding the subject's mental condition.

Further, if the party to be examined has designated an expert psychologist to testify regarding her mental condition, the party moving for the mental examination no longer needs to show that the mental condition of the party to be examined is "in controversy." *See id.* (stating movant must show either "in controversy" *or* that party to be examined has designated psychologist to testify). Under these circumstances, when the party moving for a mental examination demonstrates "good cause," he no longer needs to show that the examination is relevant to issues that are genuinely "in controver-

sy" or that there is a reasonable nexus between the condition "in controversy" and the examination sought. There is no "in controversy" component under rule 201.1(c)(2), and it would defeat the apparent intent behind rule 204.1(c) of providing the trial court with two alternative forms of proof to support an order compelling a mental examination by also requiring a showing of "in controversy." Thus, if the party to be examined has designated a psychologist to testify as an expert, then the party moving for the mental examination must meet the "good cause" element of rule 204.1(c) by showing that: (1) the examination is relevant to issues in the case and that the examination will produce, or is likely to lead to, relevant evidence; (2) there is a reasonable nexus between the condition of the person to be examined and the examination sought; and (3) it is not possible to obtain the desired information through means that are less intrusive than a compelled examination.[1]

Regardless of the changes rule 204.1 has had on the *Coates* test, the facts of this case show that good cause exists for compelling a mental examination of Wilkerson by relators' expert psychologist. Wilkerson alleged that she suffered and will suffer past and future mental anguish as a result of her conditions of employment with relators and her termination. She is seeking punitive damages for these injuries. In response to discovery, she stated that she visited at least four doctors for therapy resulting from the mental anguish she suffered. Dr. Ruteledge, Wilkerson's physician expert, will testify not only about her mental anguish, but will also testify about the physical injuries she suffered as a result of her termination. Wilkerson has also had several visits with her psychologist since her termination on September 29, 1999; his treatment of her lasted from December 9, 1999 to September 5, 2000. Finally, Wilkerson's allegations regarding her inability to work since September 1999 support her allegation that she will continue suffering mental anguish in the future.

Through Wilkerson's pleadings, discovery responses, and designations of both a psychologist and a medical doctor to testify about her mental anguish, she has made her mental anguish a central issue in the case. As a matter of fact, the evidence supports a determination that she has placed her mental condition in controversy. Further, a mental examination by relators' expert psychologist is likely to lead to the discovery of relevant evidence regarding the nature and extent of her mental anguish damages, the bases for her injuries, and the likelihood of her suffering future mental anguish. Because the mental examination is intended to explore Wilkerson's allegations of mental anguish as they relate to her termination, a reasonable nexus exists between her mental condition and the examination sought. Finally, the information relators will obtain from conducting their own mental examination is not likely to be acquired by other means. Deposing Wilkerson's expert only allows relators' expert to base his opinions on the information obtained by Wilkerson's expert. In order for relators to make their own analysis of the nature of Wilkerson's mental anguish and effectively challenge the opinions of Wilkerson's expert, relators' expert psychologist needs to be able to conduct an independent evaluation of Wilkerson. The reasoning of the court of

---

1. Although the Texas Supreme Court stated in *Coates* that the two prongs of its test could not be met by a showing of "mere relevance to the case," 758 S.W.2d at 751, rule 204.1(c) has made the showing of "in controversy" unnecessary under both prongs of the *Coates* test when the party moving for a mental examination relies on rule 204.1(c)(2).

**508**

appeals in *Sherwood Lane Assocs. v. O'Neill* is directly on point:

> The minor has already been examined by her expert witnesses. Unless relators are allowed the requested relief, their expert's analysis will be limited to a review of the minor's records and the testimony of the minor's psychologists. Relators' expert would be precluded from examining matters not covered by the minor's psychologists' examinations and would be precluded from making his own observations. The trial court's action severely restricts relators' opportunity to discover facts that may contradict the opinions of the minor's expert witnesses. In turn, such restriction severely limits relators' ability to contest the minor's claim for mental injury damages.
>
> The ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed. Fundamental fairness dictates that relators' psychiatrist be allowed to examine the minor; otherwise, relators will be at a severe disadvantage in the "battle of experts."

782 S.W.2d at 945 (citations omitted).

We hold relators have shown good cause for an independent mental examination. Thus, because Wilkerson designated a psychologist to testify regarding her mental anguish and because good cause was shown to compel a mental examination by relators' expert psychologist, the trial court abused its discretion in denying relators' motion to compel the mental examination of Wilkerson. *See* TEX.R. CIV. P. 204.1(c)(2). Finally, because relators need to conduct the examination before trial in order to adequately defend against Wilkerson's allegations of mental anguish and the opinions of Wilkerson's expert psychologist, an appeal of the trial court's order after trial would not provide an adequate remedy.

## V. CONCLUSION

The trial court abused its discretion in denying relators' motion to compel the mental examination, and an adequate remedy by appeal does not exist. Thus, we conditionally grant relators' petition for writ of mandamus. We are confident the trial court will vacate its order in accordance with this opinion. We instruct our clerk to issue the writ only if the trial court fails to comply with this opinion.