**Conditionally Grant and Opinion Filed this 19th day of June, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00539-CV

### IN RE TEN HAGEN EXCAVATING, INC., Relator

**Original Proceeding from the County Court at Law No. 1**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-00454-A**

# OPINION

Before Justices Moseley, Fillmore, and Evans
Opinion by Justice Evans

Relators filed this mandamus proceeding after the trial court refused to order the physical examination of one of the parties in this case. We conditionally grant relief.

### FACTUAL AND PROCEDURAL CONTEXT

The factual and procedural context in which the motion for a physical examination arose is somewhat unusual. This is a personal injury case arising from a collision involving the vehicle in which real party in interest, Jose Castro-Lopez, was traveling. On December 22, 2011, Castro-Lopez intervened in an already-pending lawsuit regarding the accident. Castro-Lopez claims to have sustained significant injuries and damages to his hand, wrist and arm in the accident. In addition to recovery for past damages, he seeks damages for continuing and future physical pain, mental anguish, physical impairment, and future medical expenses for a second operation recommended by his treating physician.

An agreed level III scheduling order is in effect in the case. Under the scheduling order, the expert designation deadline was December 5, 2013, and the deadline for completion of discovery was December 20, 2013. Castro-Lopez designated his treating physician, Thomas C. Diliberti, M.D., as one of his medical experts. Relator, Ten Hagen Excavating, Inc., initially designated Charles Crane, M.D. as its medical expert. Dr. Crane filed a controverting affidavit concerning necessary costs and services pursuant to chapter 18 of the Texas Civil Practice and Remedies Code. Castro-Lopez moved to strike Dr. Crane's controverting affidavit. On October 25, 2013, Dr. Crane died. The trial court granted Castro-Lopez's motion to strike Dr. Crane's chapter 18 affidavit on November 19, 2013. At the same time, the trial court extended the deadline for Ten Hagen to file controverting affidavits under chapter 18 of the civil practice and remedies code until December 12, 2013. The trial court did not further extend the deadlines under the scheduling order for the designation of experts or the completion of discovery.

Ten Hagen was able to obtain a new expert, John Sklar, M.D., within the time frame ordered by the court. Ten Hagen filed a motion for a physical examination of Castro-Lopez by Dr. Sklar on December 10, 2013, and a new chapter 18 affidavit in which Dr. Sklar was the affiant on December 12, 2013. Noting that in Dr. Diliberti's treatment records of an April 18, 2013 examination of Castro-Lopez Dr. Diliberti for the first time reported ulnar sensory loss, Dr. Sklar suggested in his chapter 18 affidavit that "an additional medical evaluation would shed further light" on Castro-Lopez's claim of ulnar sensory loss. Dr. Sklar's affidavit further states that Dr. Diliberti had made "a wide variety of diagnoses here that do not necessarily fit together nor are they all reasonably considered to be sequella of the motor vehicle collision." The trial court conducted a hearing on the motion for physical examination and denied the motion on March 24, 2014. Ten Hagen filed this mandamus proceeding, arguing that the trial court clearly abused its discretion in denying its motion for a physical examination of Castro-Lopez.

### Standard for Granting Mandamus Relief

Mandamus is an extraordinary remedy that is available only in limited circumstances. *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex. 1996) (orig. proceeding) (citing *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)). Mandamus is appropriate "only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Id.* To obtain mandamus relief, a relator must show both that the trial court has clearly abused its discretion and that relator has no adequate appellate remedy. *In re Prudential Ins. Co.,* 148 S.W.3d 124, 135–36 (Tex. 2004); *Walker,* 827 S.W.2d at 839.

### Adequacy of Appellate Remedy

We turn first to the question of whether appeal is an adequate remedy in this case. As a general matter, in cases in which discovery is improperly denied, a party will not have an adequate remedy by appeal: (1) when the appellate court would not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *See In re Allied Chem. Corp.,* 227 S.W.3d 652, 658 (Tex. 2007) (orig. proceeding); *In re Ford Motor Co.,* 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). A denial of discovery goes to the heart of a party's case when the party is prevented from developing essential elements of its claim or defense. *Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex. 1995) (orig. proceeding).

In some cases a party might well be able to develop and present a viable claim or defense even if denied a physical examination. However as discussed in greater detail below, here

–3–

Castro-Lopez's complained-of injury cannot be assessed by simple resort to review of the records of the treating physician in the case. The injuries Castro-Lopez alleges are neither limited in their extent or impact. Castro-Lopez seeks more than mere recovery for past medical expenses and other past damages. He pleaded that even after the surgery he underwent to repair the injury, he will suffer future medical expenses, future physical impairment, future lost earnings from continued loss of use of his wrist, and continued pain and suffering. Without being granted an examination, Ten Hagen will be restricted in its opportunity to determine the nature and extent of Castro-Lopez's injury and to discover and develop facts that may contradict the opinions of his expert witnesses. *See Sherwood Lane Assocs. v. O'Neill*, 782 S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1990, no writ); *see also In re Transwestern Publishing,* 96 S.W.3d 501, 508 (Tex. App.—Fort Worth 2002, orig. proceeding). Under the facts of this case, the denial of Ten Hagen's request to conduct a physical examination both severely compromises its ability to develop a defense to Castro-Lopez's claims for continued loss of use of his wrist and for damages arising from possible future surgery on his wrist and will deny this Court the ability to evaluate the effect of the trial court's error on appeal. Thus, an appeal of the trial court's order after trial would not provide an adequate remedy for an abuse of discretion on the part of the trial court in failing to grant the motion.

### TIMELINESS OF RELATOR'S MOTION FOR PHYSICAL EXAMINATION

Before considering whether the trial court abused its discretion under rule 204.1 of the Texas Rules of Civil Procedure, the Court must address Castro-Lopez's contention in its response to the petition for mandamus that Ten Hagen's motion for physical examination of Castro-Lopez was not timely filed. Castro-Lopez did not oppose Ten Hagen's motion in the trial court on the basis that it was made less than thirty days before the end of the applicable discovery period. Rather, Castro-Lopez argued in his response in the trial court that Ten Hagen

–4–

had failed to establish good cause for the examination, that the proposed order did not meet the requirements of rule 204.1, and that Dr. Sklar was not qualified to conduct the physical examination. Although Castro-Lopez failed to raise the timeliness argument expressly in the trial court, we nevertheless address the argument here because the subject was indirectly discussed at the hearing in regard to the length of time Castro-Lopez had been a party and the length of time Ten Hagen had passed on its opportunity to depose Castro-Lopez's treating physician.

Rule 204.1 of the Texas Rules of Civil Procedure requires a party to move for a medical examination, "no later than 30 days before the end of any applicable discovery period." TEX. R. CIV. P. 204.1. Castro-Lopez first argues that Ten Hagen's request for a physical examination was untimely because it was not made thirty days before the expert designation deadline under the agreed level III scheduling order in effect in the case. The agreed scheduling order in this case included not only a December 5, 2013 deadline to designate expert witnesses, but also a December 20, 2013 deadline to complete "all discovery." Requests for mental or physical examinations are a form of discovery, TEX. R. CIV. P. 192.1(g), thus the more specifically applicable December 20, 2013 deadline for completing "all discovery," rather than the December 5, 2013 deadline for designating experts, was the "applicable discovery deadline" for purposes of calculation of the thirty day time period for requesting a physical examination under rule 204.1.

Resorting to this later deadline is not enough, however, to render Ten Hagen's request unquestionably timely under the literal language of the rules. Ten Hagen's request for the physical examination of Castro-Lopez was not made until the tenth day before the end of the discovery period in the scheduling order. In the circumstances of this case, however, Ten Hagen's failure to request the examination "no later than thirty days" before December 20, 2013 does not control the outcome. While we review a trial court's enforcement of its scheduling

–5–

order for an abuse of discretion, *Gunn v. Fuqua*, 397 S.W.3d 358, 377 (Tex. App.—Dallas 2013, no pet.), the unique facts and circumstances of this case dictate that the trial court properly considered the request despite the fact that it was not timely under the rules of procedure.

"The ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *In re Colonial Pipeline Co.,* 968 S.W.2d at 941 (quoting *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984)). Ten Hagen's request for a physical examination of Castro-Lopez became necessary because its former testifying expert witness, Dr. Crane, died. Ten Hagen cannot be held at fault for the unfortunate and untimely death of its expert witness. Just thirty-one days before the close of the discovery period under the scheduling order, Ten Hagen was required by the court to obtain a new chapter 18 controverting affidavit. Virtually as soon as he was brought into the case, Ten Hagen's replacement expert witness, Dr. Sklar, concluded that the discovery that *he* needed to understand the nature of Castro-Lopez's injuries and his claims for past and future damages was an independent medical exam. Ten Hagen filed its request for a physical examination of Castro-Lopez almost immediately upon the trial court's order striking its chapter 18 affidavit—and less than two months after Dr. Crane's death—before the end of the discovery period and before the deadline the trial court had imposed for obtaining a new chapter 18 affidavit. Given that the trial court recognized the necessity of permitting a replacement expert albeit close to the expiration of the discovery period due to the untimely death of the previous expert, the replacement expert was not limited by the trial court as to what he needed in order to form his opinions based on his medical judgment. In these circumstances, Ten Hagen's request cannot be said to be untimely.

**STANDARDS FOR GRANTING A PHYSICAL OR MENTAL EXAMINATION**

### *Discretionary Nature of Rule 204.1*

Next we consider whether the trial court abused its discretion in denying Ten Hagen's request for a physical examination of Castro-Lopez. The scope of discovery largely rests within the discretion of the trial court. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex. 1985) (orig. proceeding). In considering whether a trial court has clearly abused its discretion with regard to a discovery order, the reviewing court may not substitute its judgment for that of the trial court and the relator must establish that the trial court could reasonably have reached only one decision. *Walker*, 827 S.W.2d at 839–40. "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id.* at 840. We conclude that the trial court's action was arbitrary and unreasonable in this case.

Rule 204.1(c) of the Texas Rules of Civil Procedure does not grant an automatic right to obtain a physical or mental examination. As the Supreme Court has noted in construing the substantially similar federal rule,[1] there must be greater showing of need to obtain a physical or mental examination than to obtain other sorts of discovery. *Schlagenhauf v. Holder,* 379 U.S. 104, 118 (1964). The relevant portion of rule 204.1(c) provides, "The court may issue an order for examination only for good cause shown and only . . . when the mental or physical condition . . . of a party . . . is in controversy." TEX. R. CIV. P. 204.1(c). While the use of the words "shall" or "must" suggest that an action is mandatory, the ordinary meaning of "may" is permissive. *Inwood N. Homeowners' Ass'n, Inc. v. Meier*, 625 S.W.2d 742, 743 (Tex. Civ. App.—Houston

---

[1] The Texas Supreme Court has concluded that because the Texas rule governing mental and physical examinations was originally derived from rule 35 of the Federal Rules of Civil Procedure, federal courts' construction of rule 35 is helpful to an analysis of the Texas rule. *Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988).

–7–

[1st Dist.] 1981, no writ) (quoting *Mitchell v. Hancock*, 196 S.W. 694, 700 (Tex. Civ. App. 1917, no writ)); *see also In re Lambdin*, No. 07-03-0328-CV, 2003 WL 21981975, at *4 (Tex. App.—Amarillo Aug. 20, 2003, orig. proceeding) ("It is logical to construe the word 'may' as vesting the trial court with some range of permissiveness or discretion."). Thus, the ordinary meaning of the language of rule 204.1 suggests that the trial court is vested with discretion in determining whether to grant a physical or mental examination under rule 204.1.

Where a trial court possesses discretion, the failure to appropriately exercise that discretion can form the basis for mandamus relief. When a trial judge exercising an otherwise discretionary authority has only one course to follow and one way to decide, the discretion vested in the court is for all practical purposes destroyed. *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (Tex. 1959); *U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 671 (Tex. App.—Houston [1st Dist.] 1993, no writ). In those circumstances, mandamus is appropriate when the trial court fails to follow the one course permitted by the circumstances facing the trial court.

### *Requirements for Granting Examination under Rule 204.1*

Rule 204.1, by its express language, places an affirmative burden on the movant to meet a two pronged test: (1) the movant must show that the party's condition is "in controversy"; and (2) the movant must demonstrate that there is "good cause" for such an examination. TEX. R. CIV. P. 204.1(c); *Coates*, 758 S.W.2d at 751. In the absence of an affirmative showing of both prongs of the test, a trial court may not order an examination. *Coates,* 758 S.W.2d at 751.

Courts considering orders under rule 204.1 must walk a fine line. Because an order requiring a medical examination is an intrusive order, this Court has noted, "When a party's mental or physical condition is implicated, the court must balance the party's right of privacy and the movant's right to a fair trial." *In re Buch*, No. 05-98-01665-CV, 1998 WL 908843, at *3 (Tex. App.—Dallas Dec. 31, 1998, orig. proceeding) (mem. op., not designated for publication).

–8–

Concern for the privacy rights of the parties compels courts considering motions under rule 204.1 to carefully observe the limitations prescribed by rule 204.1 to avoid opening the door to compulsory examinations in cases in which the pleadings assert in conclusory fashion that a physical or mental attribute was a factor in bringing about the incident underlying the lawsuit. *Id.*; s*ee, e.g., Schlagenhauf,* 379 U.S. at 118–19 (concluding under Federal Rules of Civil Procedure that order requiring examination of bus driver by specialists in internal medicine, ophthalmology, neurology and psychiatry was not warranted by mere allegation that driver was not mentally or physically capable of operating bus at time of accident and driver's eyes and vision were impaired); *Williams v. Sanderso*n, 904 S.W.2d 212, 215 (Tex. App.—Beaumont 1995, no writ) (cautioning against routinely ordering eye examinations of defendant in vehicular accident cases in which plaintiff alleges that defendant failed to keep proper lookout); *Spear v. Gayle*, 857 S.W.2d 122, 125 (Tex. App.—Houston [1st Dist.] 1993, no writ) (rejecting contention that mental examination was appropriate in case where plaintiff pleaded defendant was negligent in failing to seek treatment for alleged mental disorder when defendant did not seek to rely on any mental condition as part of his defense). On the other hand, consideration of the interests of justice and the right of the parties to a fair trial requires that when a party asserts a physical or mental condition as part of a claim or defense, a trial court must be careful not to prevent the development of medical testimony that would allow the opposing party to fully investigate the conditions the party asserting the existence of the condition has placed in issue. *See In re Trimac Transp., Inc.,* No. 09-08-270 CV, 2008 WL 2758793, at *1 (Tex. App.—Beaumont July 17, 2008, orig. proceeding) (mem. op.); *Sherwood Lane Assocs.,* 782 S.W.2d at 945. The "in controversy" and "good cause" requirements imposed by rule 204.1 are the tools courts use in balancing the respective rights of the parties to privacy and to a fair trial.

***"In Controversy" Requirement***

Rule 204.1 permits a party to request a physical or mental examination of another party when the mental or physical condition of the party or a person in the custody, conservatorship or legal control of the party is "in controversy." TEX. R. CIV. P. 204.1(c)(1). Just as under federal jurisprudence, these two requirements are not met "by mere conclusory allegations of the pleadings—nor by mere relevance to the case." *Coates*, 758 S.W.2d at 751; *see also Schlagenhauf,* 379 U.S. at 117–18. In cases involving physical injury, there are situations, however, where the pleadings alone are sufficient to place a party's physical condition in controversy.[2] For instance, the Supreme Court has suggested that a plaintiff in a negligence action who claims physical injury as the result of a party's negligence places his "physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury" simply by seeking recovery for the alleged physical injury. *Schlagenhauf,* 379 U.S. at 119 (dictum). This same precept applies equally to a defendant who asserts his physical condition as a defense to a claim. *Id.* (dictum). Thus, where a plaintiff alleged he was injured in a boating accident, by asserting a physical injury and intending to use expert medical testimony to prove the injury, the plaintiff placed his physical condition in controversy. *Beamon v. O'Neill*, 865 S.W.2d 583, 586 (Tex. App.— Houston [14th Dist.] 1993, orig. proceeding); *see May v. Lawrence*, 751 S.W.2d 678, 679 (Tex. App.—Tyler 1988, orig. proceeding [leave denied]) (because suit was for personal injuries allegedly sustained in vehicle accident allegedly caused by employee of defendant, trial court did not abuse discretion in ordering a physical examination of plaintiff).

---

[2] Rule 204.1 is rarely litigated with regard to physical examinations, as opposed to mental examinations. *In re Caballero*, 36 S.W.3d 143, 145 (Tex. App.—Corpus Christi 2000, orig. proceeding). We need not consider here whether the "in controversy" requirement varies according to whether physical or mental examinations are at issue. *See In re Medina*, No. 01-07-00747-CV, 2007 WL 4279171, at *2 (Tex. App.—Houston [1st Dist.] Dec. 6, 2007, no pet.) (mem. op.).

In this case, Castro-Lopez seeks damages not only for past damages but also for future medical bills, pain, mental anguish, disfigurement, physical impairment, and lost earning capacity. The medical records included in the mandamus record clearly indicate that Dr. Diliberti recommends that Castro-Lopez undergo a future surgery to restore lost movement and to lessen continuing pain associated with the hardware that was implanted to repair Castro-Lopez's injured wrist. In these circumstances, the claims advanced by Castro-Lopez in the case have placed his injuries in controversy as that term is used in rule 204.1.

### *"Good Cause" Requirement*

That a party's pleadings place his physical condition in controversy is not alone enough to compel a physical examination under rule 204.1. Rule 204.1 also requires that the trial court find "good cause" for the examination. TEX. R. CIV. P. 204.1(c). As the Supreme Court noted in construing federal rule 35, which includes a similar requirement, the "good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule." *Schlagenhauf,* 379 U.S. at 117-18. We have explained the elements of good cause thus:

> First, the examination must be relevant to genuine issues in the case. The movant must show the examination will produce or is likely to lead to relevant evidence. Second, the movant must show there is a reasonable nexus between the condition in controversy and the examination sought. A mere conclusory pleading of mental condition is not sufficient. Third, the movant must show it is not possible to obtain the information through less intrusive means. The movant must show it cannot get a fair trial without the information thus necessitating the intrusion.

*In re Buch*, 1998 WL 908843, at *3.

Information is relevant if it "relates to the claim or defense of the party seeking discovery." TEX. R. CIV. P. 192.3(a); *In re Click,* No. 13-13-00682-CV, 2014 WL 69887, at *4 (Tex. App.—Corpus Christi Jan. 6, 2014, orig. proceeding) (where expert testimony established that hair testing more than ninety days after exposure is not scientifically reliable to determine whether a person used a drug at a particular time, or was intoxicated or impaired from a drug at a

–11–

particular point in time, evidence before the trial court did not establish that the requested examination was relevant to issues that are genuinely in controversy); *see also In re Dana Corp.*, 138 S.W.3d 298, 304 (Tex. 2004) (orig. proceeding) (reciting relevance standard). Castro-Lopez has not disputed the relevance of the examination to genuine issues in the case and there can be no doubt that the examination sought here is relevant to Castro-Lopez's claimed injuries, which are central to his case and his right to seek recovery of the damages he claims. *Cf. In re Buch*, 1998 WL 908843, at *5 (defendant's alleged errors in judgment with regard to his personal life were not relevant to claim that doctor's conduct fell below standard of care and mental examination was not appropriate); *In re Caballero*, 36 S.W.3d at 145 (in suit based on allegedly false allegations of shoplifting, requested gynecological examination after plaintiff had undergone hysterectomy was not relevant where party requesting examination was unable to articulate why an examination would shed any light on bleeding condition that existed prior to hysterectomy).

A court is not required or even permitted to order an examination simply because it finds the examination will produce relevant evidence. *Schlagenhauf*, 379 U.S. at 117–18. The "good cause" requirement of rule 204.1 would be meaningless if mere relevance alone sufficed to establish good cause. *See id.* To satisfy the second element of good cause, a party seeking a physical or mental examination must demonstrate that there is a reasonable nexus, in other words a reasonable connection, between the condition in controversy and the examination sought. *Coates*, 758 S.W.2d at 752–53; *see generally In re Click*, 2014 WL 69887, at *4 (where test requested was not shown to be reliable to establish facts that would be relevant to case, reasonable nexus between the condition in controversy and the examination sought did not exist); *In re Transwestern*, 96 S.W.3d at 507 (reasonable nexus existed when examination was intended to explore allegations of mental anguish as they related to the event giving rise to suit).

–12–

Castro-Lopez argues that Ten Hagen failed to meet this burden because it has not substantively described what the actual physical examination would entail or what it would be expected to reveal. Castro-Lopez provides no authority suggesting that such a substantive description of the precise nature of the examination or expected outcome of the examination is required under rule 204.1. Moreover, Dr. Diliberti's examination notes should have allowed the trial court to understand the nature of the examination requested and how it was connected to the alleged injury.

Dr. Diliberti's April 18, 2013 examination notes observed that Castro-Lopez was experiencing pain from the incision over his left distal ulna, the site of the post-accident surgery. Dr. Diliberti further commented that the hardware from the surgery was palpable and painful and that wrist motion and pronation caused Castro-Lopez pain in the area of the hardware implanted during the surgery. He also noted that significant stress could not be applied to the wrist joint. These are all matters that Castro-Lopez claims are a direct consequence of his injury and are the basis for his claims for damages and losses, including claims for the physical pain, loss of earning capacity, disfigurement, and physical impairment that Castro-Lopez claims with regard both to the past and the future. Accordingly, Dr. Diliberti's notes and Castro-Lopez's pleadings together provide the necessary nexus between the claimed injury and the requested examination and satisfy the second element of the good cause test.

The final element of good cause requires that it not be possible to obtain the information sought by less intrusive means and that absent the examination the relator will not be able to obtain a fair trial. *In re Buch,* 1998 WL 908843, at *3. Texas courts have identified a number of avenues that could, in appropriate cases, potentially provide less intrusive means for obtaining medical information without an examination. For instance, less intrusive measures might include deposing the opposing party's doctors and attempting to obtain copies of medical records, *In re*

–13–

*Caballero*, 36 S.W.3d at 145, or relying on existing expert witness reports already filed in the case, *In re Bell Hot Shot Co.,* No. 14-13-00877-CV, 2014 WL 260116, at \*2 (Tex. App.—Houston [14th Dist.] Jan. 9, 2014, orig. proceeding) (mem. op.).  The adequacy of these measures must still be evaluated in light of the fair trial standard, however.  In general, and particularly where the intended examination is not intrusive, invasive or unnecessarily physically uncomfortable, parties are permitted to explore matters not covered by the opposing party's examinations, make their own observations, and attempt to discover facts that may contradict the opinions of the opposing party's expert witnesses.  *Exxon Corp. v. Starr,* 790 S.W.2d 863, 887 (Tex. App.—Tyler 1990, orig. proceeding); *Sherwood Lane Assocs.,* 782 S.W.2d at 945.  In many cases the treating physician's notes, the medical records of the complaining party, and expert witness reports filed by other parties cannot serve these legitimate purposes.  In addition, where the information already available through less intrusive means is inadequate, a party may obtain a physical examination for which good cause is otherwise shown.  *Williams,* 904 S.W.2d at 216 (where eye injury occurred two years prior to the truck-pedestrian accident and the latest eye examination occurred a year prior to the accident, records of those matters would not be adequate to determine state of vision at the time of the accident and no less intrusive method than an eye examination was available to determine the adequacy of eyesight).

In the circumstances of this case, it would be unfair to deprive Ten Hagen of the chance to obtain an independent assessment to present to the jury.  Dr. Diliberti's notes are copied to counsel for Castro-Lopez suggesting that the examination he conducted and the notes he prepared were drafted with attention to litigation.  Additionally, it is apparent from Dr. Diliberti's notes that his examination did not reveal the complete extent of Castro-Lopez's continuing need for treatment.  Specifically, Dr. Diliberti noted:

> Jose . . . would benefit from evaluation of the ulnar sensory nerve and excision and treatment of the probable neuroma or other injury to the ulnar sensory nerve.

–14–

If there is a significant neuroma, the end of the nerve will either need to be repaired or implanted into deep tissue. Additionally, electrodiagnostic studies would be beneficial prior to surgery.

Finally, it is clear that Ten Hagen's testifying expert did not feel confident in relying on Dr. Diliberti's examination. Dr. Sklar noted that Dr. Diliberti's April 18, 2013 examination provided the first report in the file of any ulnar sensory loss despite the fact that Castro-Lopez had been previously examined. He also concluded that the diagnoses made by Dr. Diliberti did not "fit together" and were not "all reasonably considered to be sequella of the motor vehicle collision."

The facts of this case are unique. Here Ten Hagen suffered the untimely death of its sole expert witness shortly before the close of the discovery period after the treating physician submitted a report that suggested even he could not confidently assess the full extent of Castro-Lopez's future need for additional treatment. The future damages Castro-Lopez claims as a result of the need for that surgery cannot be assessed by simple resort to review of the medical records in the case, examination of the injured appendage during a deposition of Castro-Lopez, or further development of Dr. Diliberti's opinion during a deposition of Dr. Diliberti. Ten Hagen's request for a physical examination of Castro-Lopez was made within the discovery period agreed to by the parties and would not have unnecessarily prolonged the discovery period or necessitated a continuation of the original trial date had the request been granted without delay. If Ten Hagen is not allowed to obtain an independent medical examination of Castro-Lopez, it will have no opportunity to explore and develop evidence that supports theories that contradict the theories espoused by Dr. Diliberti. In short, on this record, the information that Ten Hagen seeks is necessary for a fair trial and cannot be obtained by less intrusive means.

*Qualifications of Examining Physician*

Castro-Lopez also objected to Ten Hagen's request for a physical examination on the ground that Dr. Sklar is not qualified to perform an evaluation of the injuries Castro-Lopez

claims. Specifically, Castro-Lopez contends that because Dr. Sklar is a physiatrist, not an orthopedic surgeon or a hand specialist or nerve specialist, he does not possess the necessary qualifications to assess orthopedic issues.

A trial court may not deny a motion for an examination under rule 204.1 based on lack of qualification of the proposed examining doctor. In its reply in the trial court, Ten Hagen conceded that when moving for a physical examination, the movant has no absolute right to appointment of a physician of its own choosing to conduct the examination. *See Emp'rs Mut. Cas. Co. v. Street,* 702 S.W.2d 779, 781, *reh'g denied,* 707 S.W.2d 277, 279 (Tex. App.—Fort Worth 1986, orig. proceeding) (interpreting former rule 167a). Ten Hagen further conceded it is within the trial court's discretion to choose a physician it finds to be independent and neutral to conduct the examination rather than the physician requested by the movant. *See Street*, 702 S.W.2d at 780. The trial court is not required, however, to choose an independent physician; it may choose any physician it finds appropriate, including the one requested by the movant. *May*, 751 S.W.2d at 679. Thus, if a trial court finds the proposed examining physician to be unqualified, the remedy is to appoint a different physician of the trial court's choice rather than to deny the examination altogether.

CONCLUSION

We **CONDITIONALLY GRANT** relator's petition for writ of mandamus. A writ will issue only in the event the trial court fails to vacate its March 24, 2014 "Order Denying Defendant Ten Hagen Excavating, Inc.'s Motion for Plaintiff Jose Castro-Lopez to Be Examined

by Defendant's Medical Expert" and order Castro-Lopez to submit to a non-invasive physical examination of his left wrist, hand and arm by a physician the trial court finds to be qualified.

/David Evans/
DAVID EVANS
JUSTICE

140539F.P05