

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00446-CV

**IN RE PHOENIX SERVICES, LLC**; Pruitt's Fract Tanks, LLC; and Jose Jaime Jacquez

Original Mandamus Proceeding[1]

Opinion by:    Irene Rios, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Irene Rios, Justice

Delivered and Filed:  October 31, 2018

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In this original proceeding, relators assert the trial court abused its discretion by denying their motion to compel a neuropsychological examination pursuant to Texas Rule of Civil Procedure 204.  We conditionally grant the petition for writ of mandamus.

### BACKGROUND

The underlying lawsuit involves an automobile accident in which two plaintiffs and one intervenor allegedly suffered injuries.  One of the plaintiffs, real party in interest Fernando Martinez, Jr., claimed, among other injuries, traumatic brain injury.  In addition to other treating physicians, Martinez retained a neuropsychologist, Dr. Larry Pollock, Ph.D.  On October 26 and 27, 2017, Dr. Pollock interviewed and evaluated Martinez, and issued two reports: (1) a General

---

[1] This proceeding arises out of Cause No. 17-01-33870-MCV, styled *Fernando Martinez, Jr. and Jose Javier Cisneros v. Phoenix Services, LLC, et al.*, pending in the 293rd Judicial District Court, Maverick County, Texas.  The Honorable Gloria Saldana, retired, signed the order at issue here.

Diagnostic Battery and Neuropsychological Evaluation and (2) a Brain Injury Functional Evaluation. Martinez designated Dr. Pollock as a testifying expert.

Relators retained and designated their own expert, Dr. Corwin Boake, Ph.D., who is also a neuropsychologist. On April 13, 2018, relators filed a motion to compel a neuropsychological examination of Martinez.[2] Dr. Boake's affidavit described the examination and tests he intended to conduct. Martinez opposed the examination, arguing relators did not show there were less intrusive means by which relators could obtain the information Dr. Boake needs to offer his opinion. Martinez asserted he provided relators with Dr. Pollock's reports, a report from his medical examination, and an authorization that would allow relators to obtain Dr. Pollock's raw testing data.

Following a brief hearing, the trial court denied relators' motion, without stating its reasons. After the trial court denied the motion, relators filed Dr. Boake's expert reports, pursuant to a docket control order. Relators then filed a motion asking the trial court to reconsider its denial of their motion to compel. The trial court denied the motion, stating as follows:

> The court has reviewed the [relators'] Motion to Reconsider, the case law provided, and Dr. Boake's reports. The court finds the arguments unpersuasive as to all three plaintiffs, because:
>
> > 1. [Relators] fail to show good cause under Rule 204; The *H.E.B.* case is not on point as it is "heavily circumstantial"; and [relators] seek the "most effective" way to test the validity of medical opinions. 2. Most of the previous standard tests would be repeated unnecessarily with likely unreliable results due to the plaintiffs' prior exposure to the same type of tests and the stress of the adversarial intrusiveness of [relators'] expert as well as the excessive duration of the duplicative testing; . . ..

---

[2] Relators moved to compel a neuropsychological examination of the two plaintiffs and one intervenor. However, only the motion to compel an examination of Martinez is at issue in this mandamus proceeding.

After the trial court denied their motion to reconsider, relators filed their petition for writ of mandamus. Martinez filed a response, to which relators replied.

**STANDARD OF REVIEW**

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). Mandamus will issue only to correct a clear abuse of discretion when there is no other adequate remedy at law. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). To satisfy the clear abuse of discretion standard, the relator must show "that the trial court could reasonably have reached only one decision." *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam).

Appellate courts will not intervene to control incidental trial court rulings when an adequate remedy at law exists. *Walker*, 827 S.W.2d at 842. A party will not have an adequate remedy at law from a discovery order: (1) when the appellate court would not be able to cure the trial court's error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's error; or (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *Walke*r, 827 S.W.2d at 843-44. If a defendant needs to conduct a physical or mental examination before trial to adequately defend against a plaintiff's allegations of injury, an appeal after trial of the trial court's order denying the examination would not provide an adequate remedy. *See In re Transwestern Publ'g Co., L.L.C.*, 96 S.W.3d 501, 508 (Tex. App.—

Fort Worth 2002, orig. proceeding) (holding trial court abused its discretion in denying relators' motion to compel mental examination, and an adequate remedy by appeal did not exist).

## MENTAL EXAMINATION OF ANOTHER PARTY

Texas Rule of Civil Procedure 204.1 governs whether a movant may compel a physical or mental examination of another party. TEX. R. CIV. P. 204.1;[3] *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 303 (Tex. 2016) (orig. proceeding) (per curiam). The trial court may grant a Rule 204.1 motion if the movant shows that (1) "good cause" exists and (2) the physical condition is "in controversy." TEX. R. CIV. P. 204.1(c)(a)(1). In *Coates v. Whittington*, the Texas Supreme Court held that "[t]he requirement of good cause for a compulsory mental examination may be satisfied only when the movant satisfies three elements": (1) the examination is relevant to issues in the case and the examination will produce, or is likely to lead to, relevant evidence; (2) there is a reasonable nexus between the condition of the person to be examined and the examination sought; and (3) it is impossible to obtain the desired information through means that are less intrusive than a compelled examination. 758 S.W.2d 749, 753 (Tex. 1988) (orig. proceeding). "The movant must demonstrate that the information sought is required to obtain a fair trial and therefore necessitates intrusion upon the privacy of the person he seeks to have examined." *Id.* A plaintiff's "privacy interests require, at minimum, that [the defendant] exhaust less intrusive means of discovery before seeking a compulsory mental examination." *Id.* "If, however, a plaintiff intends to use expert medical testimony to prove his or her alleged mental condition, that condition is placed in controversy and the defendant would have good cause for an examination under Rule 167a [the predecessor to Rule 204.1]." *Id.*

---

[3] "A party may—no later than 30 days before the end of any applicable discovery period—move for an order compelling another party to . . . submit to a physical or mental examination by a qualified physician or a mental examination by a qualified psychologist . . .." TEX. R. CIV. P. 204.1(a)(1).

"Texas courts have identified a number of avenues that could, in appropriate cases, potentially provide less intrusive means for obtaining medical information without an examination." *In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859, 869-70 (Tex. App.—Dallas 2014, orig. proceeding). "For instance, less intrusive measures might include deposing the opposing party's doctors and attempting to obtain copies of medical records[,] or relying on existing expert witness reports already filed in the case[.]" *Id.* at 870 (citations omitted). However, "[i]n many cases the treating physician's notes, the medical records of the complaining party, and expert witness reports filed by other parties cannot serve these legitimate purposes." *Id.* "In addition, where the information already available through less intrusive means is inadequate, a party may obtain a physical examination for which good cause is otherwise shown." *Id.*

In this case, the only disputed issue is whether it is impossible to obtain the desired information through means that are less intrusive than a compelled examination. Martinez asserts relators failed to carry their burden. Martinez contends there is no evidence in the record that relators' "proposed eight-and-a-half-hour examination [of Martinez] was the *least* intrusive means of evaluating Martinez's mental health." At the hearing, Martinez's attorney contended Martinez had already undergone extensive testing, and repeated testing by relators would skew the results because Martinez would already be familiar with the tests. Martinez contended Dr. Pollock's reports, a report from his medical examination, and Dr. Pollock's raw testing data all provide Dr. Boake with the information he needs to offer his expert opinion. We evaluate the adequacy of these measures in light of the fair trial standard. *See Ten Hagen Excavating*, 435 S.W.3d at 870.

In his preliminary report, Dr. Boake identified deficiencies in Dr. Pollock's reports after he reviewed the raw data. Dr. Boake stated he was not aware "of any published or publicly available information about [the] assessment procedures" Dr. Pollock used in his Brain Injury Functional Evaluation. Dr. Boake also stated:

Dr. Pollock's report gives the diagnosis of major neurocognitive disorder due to traumatic brain injury. In evaluating this diagnosis the following issues need to be considered. First, for some of the neuropsychological test results that were interpreted as abnormal, no norms were used in interpretation. Review of the raw test data shows that for the Booklet Category Test, no percentile or standardized score was calculated. It appears the score was classified as abnormal based on a non-standard procedure. Second, for most of the tests that were interpreted as having abnormal results, interpretation of the test results did not use norms for Hispanic persons. For example, for the grip strength and Grooved Pegboard tests, the interpretation used norms from Canada. Other tests with this problem include the Rey complex figure, Sentence Repetition, and verbal selective reminding test. Third, some of the tests used are no longer commercially available to neuropsychologists (for example, Continuous Recognition Memory). Fourth, the Brain Injury Functional Evaluation used cognitive assessment procedures (for example, Bill's Bills) that are not standardized or available to outside clinicians. I am unaware of any documentation or evidence basis for these assessments. Fifth, some of the tests (for example, PASAT) were interpreted with norms that have not been published. Finally, the diagnosis of major neurocognitive disorder does not apply to persons who have returned to work and who are independent in daily activities such as driving. Repeat neuropsychological examination is needed to address these methodological problems in the 10/26/17 and 10/27/17 examinations.

The diagnosis of posttraumatic stress disorder was given by Dr. Cain and Dr. Pollock. The diagnosis of major depressive disorder was given by Dr. Ntakirutimana and Dr. Pollock. In evaluating these diagnoses it is important to consider the following issues. First, there is no prior history of mental health problems. Second, it is accepted that the risk of anxiety and mood disorders is increased after physical trauma. Third, the records show he has reported emotional symptoms to multiple clinicians. In addition, he has reported symptoms of anxiety and posttraumatic stress disorder on checklists and questionnaires. It is unclear if he has received mental health treatment. Repeat neuropsychological examination is needed to clarify his current mental health problems and support needs.

Relators contend Dr. Boake cannot obtain information addressing the above shortcomings merely by deposing Dr. Pollock or relying on Dr. Pollock's reports or data.

Although the trial court here found *H.E.B. Grocery* was "not on point," we believe the opinion provides useful guidance in determining when a physical or mental examination is necessary to obtain a fair trial. In that case, H.E.B. requested that the plaintiff be required to submit to a physical examination by its orthopedic expert, but the trial court denied the request. The Supreme Court analyzed the three requirements that must be shown to establish good cause: (1)

the requested examination is relevant to issues in controversy and will produce or likely lead to relevant evidence, (2) a reasonable nexus exists between the requested examination and the condition in controversy, and (3) the desired information cannot be obtained by less intrusive means. 492 S.W.3d at 303 (citing to *Coates*, 758 S.W.2d at753). The Court granted mandamus relief, finding that H.E.B. had satisfied these three requirements. *Id.* at 303-04.

Similar to *H.E.B. Grocery*, here, relators have met the good cause requirements. First, as to relevance, one of the issues in controversy is the existence and extent of Martinez's traumatic brain injury. In Dr. Boake's affidavit, he stated the examination he wanted to conduct was relevant to the neuropsychological conditions as reported by Martinez's neuropsychologists, and all the tests he wanted to use in his examination were "standard neuropsychological and psychological tests that are in common use by neuropsychologists." In his preliminary report, Dr. Boake stated the medical records he examined did not "clearly support a diagnosis [of] a concussion or traumatic brain injury caused by the 1/12/17 accident," but his conclusions were "limited in the absence of a personal examination." Second, there appears to be no dispute that there exists a reasonable nexus between the examination requested by Dr. Boake and Martinez's alleged traumatic brain injury. Third, relators have shown the desired information cannot be obtained by less intrusive means. In Dr. Boake's preliminary report, Dr. Boake requested the opportunity to examine Martinez and he stated, "Repeat neuropsychological examination is needed to clarify [Martinez's] current mental health problems and support needs." In his affidavit, Dr. Boake stated that although "a review of medical/neuropsychological records provides some insight into a person's condition, a psychologist or psychiatrist who personally examines a person is generally in a better position than one who is limited to reviewing medical records."

In analyzing the third requirement, the *H.E.B. Grocery* Court found it significant that the plaintiff intended to prove causation and damages through expert testimony, HEB merely sought

to allow its competing expert the same opportunity, and the results of its expert's requested examination went to the heart of HEB's defense strategy. *Id.* at 303-04. The same is true here: (1) Martinez intends to use expert testimony to prove causation and damages; (2) relators want to allow their competing expert "the same opportunity" to examine Martinez as Martinez's expert had; (3) the results of the requested examination "go[es] to the heart of [relators'] defense strategy"; and (4) Dr. Boake's credibility may be questioned at trial if he opines without having examined Martinez. *Id.*; *see also In re Offshore Marine Contractors, Inc.*, 496 S.W.3d 796, 801 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) ("Jones's physicians and therapists have performed examinations and tests, and the results of these examinations will form part of the evidence and the basis for expert opinion on causation and damages.").

Furthermore, Dr. Boake offered a detailed explanation of why he could not confidently rely on the alternative means suggested by Martinez. *See Offshore Marine*, 496 S.W.3d at 801 (relator's expert stated plaintiff's expert's "findings are inconsistent with typical symptoms of concussion and there are indications of test score errors and possible misrepresentations by [plaintiff] of his symptoms"); *Ten Hagen Excavating*, 435 S.W.3d at 870 (Ten Hagen's expert concluded diagnoses made by plaintiff's expert "did not 'fit together' and were not 'all reasonably considered to be sequella of the motor vehicle collision'"). Finally, the trial court's "finding" that "[m]ost of the previous standard tests would be repeated unnecessarily with likely unreliable results due to [Martinez's] prior exposure to the same type of tests and the stress of the adversarial intrusiveness of [relators'] expert as well as the excessive duration of the duplicative testing" is based entirely on the arguments of Martinez's attorney. No evidence or expert testimony was offered to support this contention.

We conclude that if relators are not allowed to obtain an independent neuropsychological examination of Martinez, they "will have no opportunity to explore and develop evidence that

supports theories that contradict the theories espoused by [Dr. Pollock]." *See Ten Hagen Excavating*, 435 S.W.3d at 871; *see also Sherwood Lane Assocs. v. O'Neill*, 782 S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) ("Unless relators are allowed the requested relief, their expert's analysis will be limited to a review of the [plaintiff's] records and the testimony of the [plaintiff's] psychologists. Relators' expert would be precluded from examining matters not covered by the [plaintiff's] psychologists' examinations and would be precluded from making his own observations. The trial court's action severely restricts relators' opportunity to discover facts that may contradict the opinions of the [plaintiff's] expert witnesses. In turn, such restriction severely limits relators' ability to contest the [plaintiff's] claim for mental injury damages.").

## CONCLUSION

For the above reasons, we hold that the information relators seek is necessary for a fair trial and cannot be obtained by less intrusive means. Therefore, we conditionally grant the petition for writ of mandamus, direct the trial court to withdraw its "Order on Defendants' Motion to Conduct Neuropsychological Examination," and enter an order requiring Martinez to submit to a neuropsychological examination on reasonable and appropriate terms and conditions. We are confident the trial court will comply within fifteen days from the date of this opinion. A writ will issue only if the trial court fails to do so.

Irene Rios, Justice