**IN RE OFFSHORE MARINE
CONTRACTORS, INC.,
Relator**

NO. 01–16–00238–CV

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued June 16, 2016

Thomas R. Nork, Legge, Farrow, Kimmitt, McGrath & Brown, L.L.P., Houston, for Relator.

Jason A. Itkin, Cory Itkin, Ryan S. MacLeod, Arnold & Itkin LLP, Houston, for Real Party in Interest.

Panel consists of Justices Bland, Brown, and Lloyd.

## OPINION

Harvey Brown, Justice

Relator, Offshore Marine Contractors, Inc. (OMC), seeks a writ of mandamus directing the trial court to vacate its denial of OMC's motion to allow its retained neuropsychological expert to examine Maurice Jones.[1] Because we find OMC has shown that it is entitled to relief, we conditionally grant its petition.

## Background

On January 7, 2015, Jones fell while working as a seaman for OMC aboard the L/B *Olivia Grace.* Jones reported losing consciousness after the fall and later, ringing in his ears, nausea, severe headaches, and confusion. Two days after the fall, Jones's symptoms worsened and he was taken to an emergency room. An emergency room physician sent Jones to a neurologist, who diagnosed impaired vision, headaches, and a concussion. Jones was also referred to an orthopedist because of his complaints of neck, shoulder, and back pain.

Nine days after his fall, Jones filed suit under the Jones Act[2] against OMC. Jones claims OMC was negligent for failing to (1) properly supervise its crew, (2) properly train its employees, (3) maintain the vessel, (4) provide adequate safety equipment, (5) provide adequate medical treatment, and (6) operate the vessel with an adequate crew. Jones seeks damages for past and future pain, physical impairment, and mental anguish.

Approximately one month after the fall, while his suit was pending, Jones's neurologist referred him to Sofia Tilton, a speech and language pathologist. Based on her testing, Tilton concluded that Jones suffers from "mild-moderate cognitive-linguistic deficits characterized by word-finding deficits, decreased information processing, short-term memory deficits, impaired attention, and dysfluent speech."

Tilton referred Jones to Dr. Larry Pollock, a neuropsychologist, for evaluation of his cognitive deficits. Pollock interviewed and examined Jones approximately two months after the accident. At that time, Jones complained of daily severe headaches, back and neck pain, word finding problems, stuttering, memory problems, depression, and irritability. Dr. Pollock administered over 25 neuropsychological tests and diagnosed Jones with a major neurocognitive disorder due to traumatic brain injury with mood disturbance and major depressive disorder.

OMC retained and designated two testifying experts: Dr. Thomas Greider, an orthopedic surgeon, and Dr. J. Robert Yohman, a neuropsychologist. OMC filed

---

1. The underlying case is *Maurice Jones v. Offshore Marine Contractors, Inc.,* cause number CV–0073526, pending in the County Court at Law No. 3 of Galveston County, Texas, the Honorable Jack D. Ewing, presiding.

2. *See* 46 U.S.C.A. § 30104 (West Supp.2015).

a motion to allow a physical examination by Dr. Greider of Jones and a neuropsychological examination and testing of Jones by Dr. Yohman. The trial court permitted the physical examination[3] but denied OMC's motion for the neuropsychological examination.

OMC filed a supplemental motion, attaching Dr. Yohman's report and declaration in which he asserted that Pollock's findings do not support either diagnosis of major neurocognitive disorder or major depressive disorder. Yohman stated that the test results did not reveal any "consistent and valid evidence" of cognitive deficits or brain injury from the fall and that he does not believe Jones's history of symptoms is "typical of mild traumatic brain injury (concussion)." Yohman further asserted that Pollock's testing contained: (1) indications of invalid responding and over-reporting of symptoms; (2) errors in scoring and interpreting test results; (3) test findings inconsistent with known patterns of brain functioning with or without head trauma; (4) allegations of symptoms developing weeks to months after the accident, which is inconsistent with the course of symptom resolution typical of mild traumatic brain injury; (5) unexplained inconsistencies not typical of persons with mild traumatic brain injury; and (6) indications Jones may have misrepresented his symptoms. Yohman concluded that Pollock's "suggestions are of noncredible performance due to validity measures." Finally, Yohman stated that Pollock did not perform the appropriate tests "to detect and quantify possible exaggeration or fabrication of somatic, cognitive, or psychological symptoms" and that "several tests" needed to be administered for this purpose.

Yohman recommended "the most thorough" clinical and neuropsychological evaluation possible, "including but not limited to," the Minnesota Multiphasic Personality Inventory–2 (MMPI–2) and the Beck Depression Inventory (BDI) tests to determine the existence of any genuine cognitive deficits, Jones's current functioning level, and the credibility of Jones's cognitive performance and symptom reporting. Yohman added that further testing would not harm Jones. The trial court denied OMC's supplemental motion seeking neuropsychological testing by Yohman. We are asked to grant relief from that denial.

### Standard of Review

▪ To be entitled to mandamus relief, a petitioner must show both that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex.2004) (orig.proceeding). Generally, appellate courts will hold that a trial court has abused its discretion if its actions were either "without reference to any guiding rules and principles" or "arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). "A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled." *In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 405 (Tex. App.—El Paso 2010, orig. proceeding) (citing *Prudential*, 148 S.W.3d at 135). A trial court's clear failure to analyze or apply the law correctly is an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

### Trial Court Abused its Discretion

▪ Requests for physical or mental examinations of an opposing party are gov-

---

**3.** The trial court limited the examination to 45 minutes.

erned by Rule 204.1 of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 204.1. Whether to grant a motion for a Rule 204.1 examination is left to the trial court's discretion. *See id.*; *In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859, 866 (Tex. App.—Dallas 2014, orig. proceeding). OMC contends the trial court abused its discretion by denying its Rule 204.1 motion.

 To be entitled to a Rule 204.1 examination, a movant must demonstrate that (1) good cause exists for the examination and (2) the party's condition is in controversy.[4] Tex.R. Civ. P. 204.1(c). These requirements may not be satisfied by "conclusory allegations" in the movant's pleadings or by "mere relevance to the case." *In re H.E.B. Grocery Co.*, No. 15-2016, WL 3157533, at *2 (quoting *Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988)). Good cause for a medical examination requires the movant to demonstrate: (1) the examination is relevant to genuine issues in the case; (2) a reasonable nexus exists between the condition alleged and the examination sought; and (3) the "desired information" cannot be obtained through less intrusive means. *In re H.E.B.*, 2016 WL 3157533, at *2; *Coates*, 758 S.W.2d at 753.

Jones does not contest the "in controversy" requirement. Nor does he contest the first two elements of good cause. Jones instead argues that OMC did not establish the third element of good cause—that it could not obtain the "desired" information through less intrusive means.

 The third element of good cause—"less intrusive means"—addresses whether the desired information "is required to obtain a fair trial and therefore necessitates intrusion upon the privacy of the person he seeks to have examined." *Coates*, 758 S.W.2d at 753. The desired information is not required to obtain a fair trial when a party may obtain the same information by deposing the opposing party's physicians or relying on existing expert reports. *See Ten Hagen*, 435 S.W.3d at 870. On the whole, courts must attempt to balance "the party's right of privacy and the movant's right to a fair trial." *Id.* at 866. Therefore, in determining whether the movant has demonstrated good cause, the trial court must evaluate the adequacy of the less intrusive measures "in light of the fair trial standard." *Id.* at 870. Jones argues that he has already undergone lengthy neuropsychological testing by Dr. Pollock, OMC did not show why another round of the same testing is necessary, and repeat testing can yield invalid results, and therefore good cause does not exist.

The Texas Supreme Court recently addressed the element of less intrusive means in *In re H.E.B. Grocery Company, L.P.* HEB requested that the plaintiff be required to submit to a physical examination by its orthopedic expert, but the trial court denied this request. *See* 2016 WL 3157533, at *1. The Court granted mandamus relief, finding that HEB had shown the desired information could not be obtained through less intrusive means. *See id.* at *3. The Court noted that: (1) the plaintiff intended to use expert testimony to prove causation and damages; (2) HEB sought to allow its competing expert "the same opportunity" to examine the plaintiff as the plaintiff's expert had; (3) the results

---

4. Rule 204.1(c)(2) eliminates the "in controversy" requirement if the movant seeks an examination by a psychologist and the opposing party "has designated a psychologist as a testifying expert or has disclosed a psychologist's records for possible use at trial."

of this requested examination "go to the heart of HEB's defense strategy"; (4) the credibility of HEB's expert would be questioned at trial if he opined without having examined the plaintiff; and (5) a subsequent injury introduced complications regarding the nature, extent, and cause of the injuries. *See id.* Thus, the requested examination was required for HEB to obtain a fair trial. *See id.*

Jones's physicians and therapists have performed examinations and tests, and the results of these examinations will form part of the evidence and the basis for expert opinion on causation and damages. Like HEB, OMC is asking for its expert, Dr. Yohman, to have the same opportunity to examine Jones. Additionally, this requested examination goes to the heart of OMC's defense strategy. *See Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex. 1995) (denial of discovery goes to the heart of a defendant's case when it prevents it from developing critical aspects of its defense, including injury and lack of causation). Without the benefit of the requested examination, Yohman's credibility could be attacked in front of the jury. *See In re H.E.B.*, 2016 WL 3157533, at *3.

In *Ten Hagen*, the court of appeals concluded that good cause required the requested medical examination when the defendant sought a physical examination of the plaintiff who sued for injuries suffered in a vehicle collision. *See Ten Hagen*, 435 S.W.3d at 862. The defendant argued that an additional examination of the plaintiff's alleged sensory loss in his arm was necessary because the diagnoses by his treating physician did "not necessarily fit together nor [did] they all reasonably considered to be sequella of the motor vehicle collision." *Id.* at 863. The appellate court held that the following facts showed good cause:

- The plaintiff's physician's notes suggested the examination and notes were "drafted with attention to litigation";

- The plaintiff's physician's notes did not reveal the complete extent of the continuing need for treatment and, therefore, future damages could not be assessed by review of the physician's medical records or his deposition;

- The defendant's testifying expert did not have confidence in relying on the examination by the plaintiff's physician; and

- The plaintiff's physician suggested in his report that even he could not confidently assess the full extent of future treatment needs.

*Id.* at 870–71. Acknowledging there were potentially less intrusive means to obtain the desired information, the court evaluated the "adequacy of these measures" in light of the fair-trial standard and concluded that denial of an independent medical exam would deny the defendant the opportunity to develop evidence contradicting the opinion of the plaintiff's physician, which was necessary for a fair trial. *Id.*

Jones contends the facts here are distinguishable from those in *Ten Hagen*. We disagree. Just as the expert in *Ten Hagen* presented proof that he could not confidently rely on the test results and records of the opposing party's expert, OMC's expert, Yohman has offered a detailed explanation of why he cannot confidently rely on Jones's previous examinations and medical records. Yohman stated that Dr. Pollock's findings are inconsistent with typical symptoms of concussion and there are indications of test score errors and possible misrepresentations by Jones of his symptoms. Thus, as in *Ten Hagen*, OMC met its burden of demonstrating that the fair-

trial standard for measuring the adequacy of the alternative means of obtaining the information could not be satisfied by deposing Pollock and Tilton or by reviewing their records. *See id.*; *see also In re H.E.B.*, 2016 WL 3157533, at *3 (granting mandamus relief because HEB showed the information its medical expert would obtain by examining plaintiff could not be obtained by reviewing records of plaintiff's expert); *In re Transwestern Pub. Co., LLC*, 96 S.W.3d 501, 507 (Tex.App.—Fort Worth 2002, orig. proceeding) (granting mandamus relief because Transwestern established deposing plaintiff's expert would not allow Transwestern to make its own analysis of plaintiff's mental anguish or effectively challenge plaintiff's expert's opinions).

■ Jones cites to three cases to support his claim that relief should be denied. *See In re Gonzalez*, No. 04–15–00553–CV, 2015 WL 5837896 (Tex.App.—San Antonio Oct. 7, 2015, orig. proceeding); *In re Thuesen*, No. 14–13–00174–CV, 2013 WL 1461790 (Tex.App.—Houston [14th Dist.] Apr. 11, 2013, orig. proceeding); *In re Caballero*, 36 S.W.3d 143 (Tex.App.—Corpus Christi 2000, orig. proceeding). All are distinguishable. In *Gonzalez*, the movant failed to demonstrate good cause because its expert only generally recommended additional testing without identifying any specific "information necessary to his evaluation or development of opinions that is not covered by existing examinations or

medical records, or that could not be obtained by other discovery, such as deposing additional witnesses." 2015 WL 5837896, at *2. In *Thuesen*, unlike this case, the defendant did not show that the plaintiff's claimed injuries were "more than routine mental anguish or emotional distress."[5] 2013 WL 1461790, at *2. Nor had the defendant shown, at an "early" stage of the lawsuit, that conventional discovery would be inadequate or that denial of the requested examinations would compromise the defendant's ability to present a defense. *See id.* at *3. In *Caballero*, the movants failed to demonstrate that a gynecological examination was necessary when they had not even attempted to obtain copies of the plaintiff's medical records. *See* 36 S.W.3d at 145. In contrast, OMC has met its burden of demonstrating that the information it desires cannot be obtained through less intrusive means.

■ When a plaintiff elects to put his neuropsychological condition in controversy through expert testimony, the requested examination is not invasive, intrusive, or uncomfortable, and less intrusive means will not yield the desired information, evenhandedness and fairness require granting the defendant's requested examination. *See Ten Hagen*, 435 S.W.3d at 871. Without his own testing, Yohman "would be precluded from examining matters not covered by the [plaintiff's neuropsychologist's] examinations and would be precluded from making his own observations," leaving him

---

5. In cases involving claims of mental anguish, Rule 204.1(c)'s requirements are not satisfied by "[a] routine allegation of mental anguish.... The plaintiff must assert mental injury that exceeds the common emotional reaction to an injury or loss." *Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex.1988); *see In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859, 867–68 (stating that plaintiff, by alleging physical injury resulting from a party's negligence "places his 'physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury' simply by seeking recovery for the alleged physical injury"). Jones does not make a claim of routine mental anguish; he claims to have suffered a traumatic, permanent brain injury.

"severely restrict[ed]" from "discover[ing] facts that may contradict the opinions of the [plaintiff's] expert witnesses." *Sherwood Lane Assocs. v. O'Neill*, 782 S.W.2d 942, 945 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding); *see In re H.E.B.*, 2016 WL 3157533, at *3 (granting mandamus relief when HEB sought same type of examination plaintiffs expert had already performed and requested examination went to heart of HEB's defense strategy); *Ten Hagen*, 435 S.W.3d at 871 (holding that trial court order denying medical examination by physician designated by defendant would prevent it from exploring and developing evidence contrary to theories of plaintiff's physician).

Under these circumstances, a failure to allow a defense expert to conduct an examination could undermine that expert's credibility and place the defendant at a disadvantage in the battle of the experts. *In re H.E.B.*, 2016 WL 3157533, at *3 (requiring HEB's expert "to testify at trial without the benefit of examining [plaintiff] places him at a distinct disadvantage because it allows [plaintiff] to call into question his credibility in front of the jury"); *Transwestern* ; 96 S.W.3d at 508 ("Fundamental fairness dictates that relators' psychiatrist be allowed to examine the [plaintiff]; otherwise, relators will be at a severe disadvantage in the 'battle of the experts.' "). Allowing both parties' experts to operate on a level playing field where they both interview Jones and conduct appropriate testing will allow the jury to consider the basis for their differing opinions.

Jones argues that testing is unnecessary because Yohman has already formed an opinion on his condition—that Jones's "course of symptom resolution" is not "typical of mild traumatic brain injury"— and has done so based solely on his review of Jones's medical records. But Yohman specifically stated that he has reached only a "preliminary opinion." And experts frequently form preliminary opinions subject to additional data. Yohman's report specifically states that he believes additional testing is necessary "to determine whether [Jones] has any genuine cognitive or psychological deficits that can be attributed to brain injury resulting from his fall in January 2015 and to assess his current functional status." OMC satisfied its burden to show good cause for Yohman to perform a neuropsychological examination. *See In re H.E.B.*, 2016 WL 3157533, at *2 (although HEB's expert could formulate opinion without examining plaintiff, this did not undermine relevance of requested examination or extinguish HEB's right to conduct requested examination).

While the trial court abused its discretion in not permitting any interview or testing by Yohman, it does not necessarily follow that OMC is allowed the full panoply of tests it seeks. The trial court retains discretion to place reasonable limits on Yohman's interview and tests. *See* Tex. R. Civ. P. 204.1(d) (order compelling examination must specify time, place, manner, conditions, and scope of examination); *In re Trimac Transp., Inc.*, No. 09–08–270–CV, 2008 WL 2758793, at *1 (Tex.App.—Beaumont July 17, 2008, orig. proceeding) (trial court retains discretion to impose reasonable limits on place and scope of testing). The length of Yohman's interview and the quantity and duration of neuropsychological tests to be administrated are matters for the trial court's discretion, which must be exercised by considering the fair-trial standard.

### OMC Has No Adequate Remedy by Appeal

Even if the trial court abused its discretion, mandamus relief is unavail-

able unless OMC shows it has no adequate remedy by appeal. *See Prudential,* 148 S.W.3d at 135. In the discovery context, an appellate remedy is not adequate if: "(1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense is vitiated or severely compromised; or (3) missing discovery cannot be made a part of the appellate record." *In re Ford Motor Co.,* 988 S.W.2d 714, 721 (Tex.1998) (orig.proceeding). The adequacy of the appellate remedy "is determined by balancing the benefits and detriments of mandamus." *In re H.E.B.,* 2016 WL 3157533, at *3.

In *H.E.B.,* the court held that HEB lacked an adequate appellate remedy without the opportunity for its expert "to fully develop and present his opinion, ensuring a fair trial." *Id.* In *Ten Hagen,* the court found no adequate remedy by appeal because the denial of a request for an independent medical examination not only compromised the defendant's ability to defend itself, it also denied the appellate court "the ability to evaluate the effect of the trial court's error on appeal." 435 S.W.3d at 864.

Without an independent examination by its expert neuropsychologist, OMC would be unable to effectively challenge Jones's experts or develop a complete analysis of the nature of Jones's injuries. *See In re H.E.B.,* 2016 WL 3157533, at *3. And, without that evidence, an appellate court would be unable to evaluate the trial court's error. *See Ten Hagen,* 435 S.W.3d at 864; *Transwestern,* 96 S.W.3d at 503. Balancing the benefits and detriments of mandamus, we conclude that, without the requested neuropsychological examination and the opportunity to develop and present its defense, OMC lacks an adequate remedy by appeal.

## Conclusion

Having found that the trial court abused its discretion and that OMC has no adequate remedy by appeal, we conditionally grant OMC's petition for writ of mandamus. We are confident the trial court will withdraw its order of February 24, 2016 denying OMC's request and grant OMC's supplemental motion for a neuropsychological examination by Dr. Yohman, subject to reasonable limitations imposed by the trial court. The writ will issue only if the trial court refuses to do so. The stay of trial, imposed by our order of May 3, 2016, is lifted.