**Opinion issued July 18, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00383-CV

———————————

## IN RE KIRBY INLAND MARINE, LP, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

This original proceeding arises from a Jones Act case in which real party in interest Rodrick Benson seeks damages for physical and psychological injuries incurred while in the course and scope of employment for relator Kirby Inland Marine.* Although Benson's neuropsychologist performed a two-day examination

---

\* The underlying case is *Rodrick Benson v. Kirby Inland Marine, LP*, cause number 2017-29148, pending in the 61st District Court of Harris County, Texas, the Honorable Fredericka Phillips, presiding.

that included a battery of tests, the trial court denied Kirby's request for its neuropsychologist to perform a 6.5-hour evaluation with no duplicative testing. Instead, the trial court limited Kirby's examination to two hours and required advance disclosure of the tests its expert planned to administer. Kirby contends that by so doing, the trial court abused its discretion. We conditionally grant relief.

## Background

Claiming both physical and psychological injuries from exposure to ammonia gas, Rodrick Benson was examined by neuropsychologist Dr. Larry Pollock over a two-day period. The examination included 28 neuropsychological tests and additional cognitive assessments. Dr. Pollock identified a number of neuropsychological deficits and concluded that Benson suffered three significant impairments: major depressive disorder, post-traumatic stress disorder (PTSD), and major neurocognitive disorder. Dr. Pollock recommended long-term treatment and rehabilitation, and he concluded that Benson's impairments would be progressive, requiring "lifelong medical care."

Kirby sought an independent neuropsychological examination by Dr. David Price that would require approximately 6.5 hours to perform. Kirby agreed that Dr. Price would not perform tests duplicative of those already performed by Dr. Pollock. Benson ultimately agreed to the examination, but he requested "reasonable limits" of a two-hour testing period and advance disclosure of the tests

2

to be performed. Kirby opposed these limitations, but the trial court issued an order imposing them.

Kirby filed a motion for reconsideration, attaching an affidavit from Dr. Price which explained that the time restriction essentially would prevent him from performing an effective evaluation of the disorders diagnosed by Dr. Pollock. Dr. Price also stated that assessment of these disorders would require administration of multiple tests, some of which take two hours to administer. Finally, Dr. Price urged the court not to require advance disclosure of the tests as it could permit Benson to anticipate and prepare for them, which could skew the results. The trial court signed an order denying the motion for reconsideration.

**Analysis**

To be entitled to mandamus relief, a petitioner must show both that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004). A trial court abuses its discretion if its actions are made "without reference to any guiding rules and principles" or are "arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts," and a clear failure to "analyze or apply the law correctly" is an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

3

Requests for a physical or mental examination of an adverse party are governed by Rule 204.1. A trial court may issue an order for a psychological examination "when the party responding to the motion has designated a psychologist as a testifying expert or has disclosed a psychologist's records for possible use at trial." TEX. R. CIV. P. 204.1(c). The movant must show that the party's condition is in controversy and that there is good cause for the evaluation. *See In re H.E.B. Groc. Co., L.P.*, 492 S.W.3d 300, 303 (Tex. 2016) (per curiam); *In re Advanced Powder Sols., Inc.*, 496 S.W.3d 838, 848 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). The good-cause requirement requires a court to balance the movant's right to a fair trial and the opposing party's right to privacy. *See In re H.E.B.*, 492 S.W.3d at 303. To show good cause for the examination, a movant must:

> (1) show that the requested examination is relevant to issues in controversy and will produce or likely lead to relevant evidence, (2) establish a reasonable nexus between the requested examination and the condition in controversy, and (3) demonstrate that the desired information cannot be obtained by less intrusive means.

*Id.*

Kirby addressed each of these requirements in its Rule 204.1 motion. Benson did not dispute that his psychological and cognitive condition was in controversy. Instead, he challenged the intrusiveness of the testing and requested two limitations the trial court ultimately imposed—a two-hour time period for the examination and advance notice of the tests to be administered.

4

Kirby stated in its motion, and reiterates here, that its proposed testing conditions were the least intrusive means to obtain the information it needed. Dr. Price agreed not to repeat tests already conducted by Dr. Pollock and stated that 6.5 hours of testing would be necessary to perform a standard neuropsychological evaluation. In its motion for reconsideration and in its mandamus petition, Kirby has asserted that the time and advance-notice limitations imposed by the trial court are an abuse of discretion because they are unreasonable in light of the proof presented, and they essentially preclude Dr. Price from performing a valid, standard neuropsychological assessment.

Benson responds that because Kirby failed to state what tests would be performed, it had no support for its request for a 6.5-hour testing period. Moreover, he argues that without knowing the tests Dr. Price would perform, "the trial court was unable to determine whether the secret tests were previously conducted, whether they were the substantial equivalent of tests that were already performed, or whether they were even necessary in the first place."

Benson's arguments in support of the trial court's order are similar to those raised by the plaintiff in *In re Offshore Marine Contractors, Inc.*, 496 S.W.3d 796 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). In that case, the plaintiff claimed that the defendant failed to meet its burden to show why additional neuropsychological testing was necessary, given that the plaintiff already had

5

undergone lengthy neuropsychological testing by his own expert and repeat testing could lead to invalid results. *See id.* at 800. This court found it was an abuse of discretion to deny the defendant's request to conduct neuropsychological testing. A need for an examination to obtain a fair trial was shown when the plaintiff would use expert testimony to prove causation and damages, the defense requested the same opportunity for evaluation as the plaintiff's expert had, and the evaluation was necessary to its defense. *See id.* at 803 (citing *In re H.E.B.*, 492 S.W.3d at 303–04).

Despite Kirby's agreement to limit the time and scope of the examination, the trial court imposed two limitations that, according to Dr. Price, essentially deny Kirby's right to an evaluation. In support of this conclusion, Kirby showed the following: (1) the two-hour time limit would essentially prevent Dr. Price from performing a standard neuropsychological examination, thereby limiting the information available to him and the conclusions he could draw; (2) the two-hour time limit would prevent him from rendering a diagnosis on each of Dr. Pollock's diagnoses because relating almost six thousand pages of medical and legal records to Benson's conditions could not be done in two hours; (3) a single test of psychopathology takes two hours to administer; (4) a psychopathology test, such as the one performed by Dr. Pollock, could be affected by attitude, but is not influenced by a "practice effect"; (5) Dr. Pollock administered only one test to assess PTSD and none of the tests he administered are ones recommended by the National Center for

PTSD; (6) Dr. Pollock's diagnosis of major depressive disorder requires further assessment because depression can be both a symptom of other mental disorders and an independent disorder; (7) lack of forewarning of tests to be administered is important to measure motivation and malingering; and (8) the American Academy of Clinical Neuropsychology contradicts Benson's claim of "practice effect" from repeat neuropsychological testing.

Although a trial court must specify the time and scope of testing, TEX. R. CIV. P. 204.1(d), "when a party asserts a physical or mental condition as part of a claim or defense, a trial court must be careful not to prevent the development of medical testimony that would allow the opposing party to fully investigate the conditions the party asserting the existence of the condition has placed in issue." *In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859, 867 (Tex. App.—Dallas 2014, orig. proceeding); *see also Sherwood Lane Assocs. v. O'Neill*, 782 S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding). If the "intended examination is not intrusive, invasive or unnecessarily physically uncomfortable," parties may explore matters not addressed by its opponent's examinations, make observations, and attempt to discover facts contradictory to the opinions of the opposing expert. *In re Advanced Powder Sols.*, 496 S.W.3d at 851; *see Offshore Marine Contractors*, 496 S.W.3d at 802–03.

Dr. Pollock conducted a battery of 28 neuropsychological tests over a two-day period, reaching multiple diagnoses that were based on his in-depth examination of Benson. Under these circumstances, fundamental fairness dictates that Kirby's expert be allowed to conduct a standard neuropsychological evaluation or it "will be at a severe disadvantage in the battle of experts." *In re Advanced Powder Sols.*, 496 S.W.3d at 851.

Because the time and advance notice limitations imposed by the trial court deny Kirby the ability to conduct a full evaluation, the limitations violate fundamental fairness and the fair-trial standard, and therefore constitute an abuse of discretion. *See id.* at 851; *Offshore Marine Contractors*, 496 S.W.3d at 802–03.

To be entitled to mandamus relief, Kirby also must establish that it lacks an adequate remedy by appeal. *See Prudential*, 148 S.W.3d at 135. In the discovery context, an appellate remedy is not adequate if:

> (1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense is vitiated or severely compromised; or (3) missing discovery cannot be made a part of the appellate record.

*In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding). The adequacy of the appellate remedy "is determined by balancing the benefits and detriments of mandamus." *In re H.E.B.*, 492 S.W.3d at 304.

There is no adequate appellate remedy when a defendant is denied the opportunity for its expert to fully develop his opinion. *See id.*; *Ten Hagen*, 435 S.W.3d at 864 (concluding there was no adequate remedy by appeal because denial of request for independent medical examination not only compromised defendant's ability to defend itself, but also prevented appellate court from being able to evaluate trial court error on appeal). The limitations imposed by the trial court have been shown to prevent Kirby's expert from performing a standard neuropsychological assessment, and thus the limitations essentially deny him the opportunity to fully develop his opinion and diagnoses. Moreover, these limitations prevent Kirby from effectively challenging Benson's experts. *See H.E.B.*, 492 S.W.3d at 304. A fair trial is ensured only if the defendant's expert has "the same opportunity as [the opposing party's expert] to fully develop and present his opinion." *Id.* at 304. And without that evidence, an appellate court is unable to evaluate the effect of the trial court's error. *See Walker*, 827 S.W.2d at 843; *Ten Hagen*, 435 S.W.3d at 864. Balancing the benefits with the detriments of granting mandamus relief, the limitations imposed by the trial court will unreasonably hamper Kirby's ability to present a defense and to challenge Benson's expert witness, and therefore appeal would not be an adequate remedy.

**Conclusion**

9

Because Kirby has established that the trial court's limitations on Dr. Price's examination are an abuse of discretion for which there is no adequate remedy by appeal, we conditionally grant mandamus relief and order the trial court to vacate its order to the extent it limits Dr. Price's evaluation to a two-hour period and requires advance disclosure of tests to be administered.

**PER CURIAM**

Panel consists of Justices Keyes, Bland, and Massengale.