# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00532-CV

---

### In re Heather Evans

---

### ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY

---

### M E M O R A N D U M   O P I N I O N

Relator Heather Evans, the plaintiff in the underlying lawsuit, seeks mandamus relief from the trial court's order compelling her to submit to a psychiatric examination by a psychiatrist selected by the real parties in interest and defendants below, David J. Johnston; Hunter Industries, Ltd.; and Weisman Equipment Co., Ltd. *See* Tex. R. App. P. 52.1. Evans asserts that the trial court abused its discretion by not requiring the psychiatrist to provide notice of the universe of possible tests that he may administer to Evans during the course of the examination. *See* Tex. R. Civ. P. 204.1 (establishing conditions under which party may obtain order compelling another party to submit to physical or mental examination by qualified physician or psychologist).

For the reasons explained below, we conditionally grant Evans's petition in part and order the district court to modify its order granting the motion for psychiatric examination to better specify the "scope of the examination," as required by Rule 204.1(d).

## BACKGROUND

The underlying personal-injury suit arises out of a motor-vehicle accident that occurred when Johnston, who was driving a company pickup truck southbound on IH-35, struck the rear of Evans's car with the front of the pickup truck. Evans sued the real parties in interest ("Johnston parties"), seeking damages for injuries allegedly suffered as a result of the accident. Evans seeks damages for past and future physical pain and mental anguish, past and future physical impairment, past and future loss of earning capacity, and past and future medical expenses.

The Johnston parties filed a motion for mental examination, asserting that Evans placed her mental-health condition in controversy by claiming that she has suffered mental anguish as a result of the accident and seeking related damages. *See id.* R. 204.1(a). Evans had produced medical records during discovery that the Johnston parties attached to their motion. The records show that Evans had been treated for certain conditions before the accident, including major depressive disorder, panic disorder, and generalized anxiety disorder, conditions which she contends were exacerbated by the accident, and that she was diagnosed with post-traumatic stress disorder (PTSD) after the accident. Evans designated the medical professionals who evaluated and treated her as persons with knowledge of relevant facts, but she had not designated any testifying experts at the time the Johnston parties filed their motion. The Johnston parties sought to compel Evans to submit to an examination by their retained expert, Christopher B. Ticknor, M.D., a board-certified psychiatrist. The Johnston parties requested that Ticknor be allowed to conduct a "noninvasive medical and psychiatric examination" of Evans to determine her current mental condition, what medical care she may need in the future, and her ability to conduct daily activities and to function in the workforce. In his affidavit attached to the

2

Johnston parties' motion, Ticknor attested that "[t]he requested examination would include a diagnostic interview and mental status examination," which would last no more than five hours, and if Ticknor deemed it necessary, he would ask Evans to perform "various paper and pencil tests" as part of the examination. Ticknor further attested that he had been asked to review "the medical and forensic records in this case regarding Ms. Heather Evans" and that he had "reviewed various records pertaining to this matter." Finally, Ticknor attested that he could not obtain "this information by means of reviewing the plaintiff's medical records or the reports of the plaintiff's experts."

Evans filed a response in which she acknowledged that the Johnston parties should be allowed to conduct a psychiatric examination because she has placed her neuropsychological condition in controversy. While Evans agreed that the Johnston parties had established good cause for the requested diagnostic interview and mental-status psychiatric examination, she argued that they failed to establish good cause for requiring her to "perform various paper and pencil tests." *See id.* R. 204.1(c) (establishing that court may issue order for examination of party only for good cause shown and only in certain circumstances, including when party's mental condition is "in controversy"). Evans asserted that the Johnston parties had failed to carry their burden to establish the necessity of those tests because they had failed to identify what tests Ticknor was considering administering, his decision-making criteria, why prior diagnostic testing was insufficient, and who would be interpreting any tests given. She also requested that the examination be limited to two hours in duration, instead of five hours.

The trial court conducted a hearing on the motion for mental examination and asked Ticknor questions about the possible testing at that time.[1] In its order granting the motion, the trial court found that good cause exists for ordering the mental examination because Evans "has placed the issue of her past and continuing mental health directly at issue in this case." The trial court ordered that Evans appear for a mental examination to be performed by Ticknor in Williamson County "at a date, time, and neutral location to be agreed upon by counsel for all parties." The trial court further ordered the following specific parameters for the examination:

> The examination itself shall take no longer than five (5) hours and may include a verbal interview of: the Plaintiff's personal and family history; Plaintiff's personal and family background; Plaintiff's past and current emotional and mental status; Plaintiff's outlook, reaction and responses to the accident that forms the basis for this lawsuit; and, the nature, type and history of Plaintiff's prior mental health treatment. At the discretion of Dr. Ticknor, the examination may also include having the Plaintiff complete standardized testing (using paper and pencil/pen) of the form that is typically and routinely used to assess an individual's mental health and/or mental diagnosis for conditions such as: depression, PTSD, etc. Prior to this examination, Dr. Ticknor is not required to identify the specific tests that he may administer to Plaintiff during the course of the examination.

> Depending on which test(s) are administered to Plaintiff Heather Evans during the examination, Dr. Ticknor may then submit the test responses to: Douglas Cooper, Ph.D, Justin O'Rourke. Ph.D., and/or Gilbert Martinez, Ph.D, psychologists who are located in San Antonio, Texas, to review and analyze/chart/graph the test responses (without being informed of the identity of the test subject). Any information regarding Plaintiff Heather Evans' testing provided to Douglas Cooper, Ph.D, Justin O'Rourke, Ph.D., and/or Gilbert Martinez, Ph.D will be done so in compliance with federal and state privacy laws and will not include any personal identifying information.

> It is further Ordered that no persons will be permitted to witness or participate in the examination of the Plaintiff by Dr. Ticknor, and the examination will not be recorded.

---

[1] Although the trial court questioned Ticknor at the hearing, Ticknor did not provide sworn testimony.

Evans subsequently filed her petition for writ of mandamus and motion for emergency relief with this Court. The Court granted the motion for emergency relief, stayed the challenged order, and requested a response from the Johnston parties. *See* Tex. R. App. P. 52.4 (precluding court from granting mandamus relief before response has been filed or response deadline has passed without response); *id.* R. 52.8(b)(1) (requiring court to request response if it "is of the tentative opinion that relator is entitled to the relief sought or that a serious question concerning the relief requires further consideration"). The real parties in interest submitted a response opposing the petition for mandamus relief.

## ANALYSIS

In her petition for mandamus relief, Evans primarily argues that the trial court abused its discretion by ordering her to submit to psychiatric testing without requiring the Johnston parties to provide notice of the universe of possible tests that Ticknor might administer and the protocol for testing so that she has a meaningful opportunity to object and seek a ruling from the trial court on any inappropriate tests or protocols. In addition, she argues that she is entitled to mandamus relief because there is no adequate remedy by appeal from an improper psychiatric-examination order.

### Standard of review

To obtain the extraordinary remedy of mandamus relief, a relator must establish that an underlying order is a clear abuse of the trial court's discretion and that the relator has no adequate appellate remedy. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 303 (Tex. 2016) (orig. proceeding); *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding)).

5

An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable, made without regard for guiding legal principles or supporting evidence. *In re Nationwide*, 494 S.W.3d at 712. Similarly, a trial court abuses its discretion if it fails to correctly analyze or apply the law to the facts. *In re H.E.B.*, 492 S.W.3d at 302-03. Thus, if the trial court's order conflicts with the Texas Rules of Civil Procedure, this failure by the trial court to correctly analyze or apply the law constitutes an abuse of discretion. *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding). When the appellate court would not be able to cure the trial court's discovery error after final judgment, the relator lacks an adequate remedy by appeal. *Id.* (citing *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942-43 (Tex.1998) (orig. proceeding); *Walker*, 827 S.W.2d at 843).

**Scope of mental examination**

Texas Rule of Civil Procedure 204 governs discovery obtained through physical and mental examinations. *See* Tex. R. Civ. P. 204.1-.5. The party seeking the examination must show both (1) good cause and (2) that the physical or mental condition of a party is in controversy or the party responding to the motion has designated a psychologist as a testifying expert or has disclosed a psychologist's records for possible use at trial. *See id.* R. 204.1(c)(1); *In re H.E.B.*, 492 S.W.3d at 303; *Coates v. Whittington*, 758 S.W.2d 749, 752 (Tex. 1988) (orig. proceeding). These requirements are not satisfied by "conclusory allegations" in the movant's pleadings or by "mere relevance to the case." *Coates*, 758 S.W.2d at 751; *see In re H.E.B.*, 492 S.W.3d at 303; *In re Transwestern Publ'g Realtors Co.*, 96 S.W.3d 501, 505 (Tex. App.—Fort Worth 2002, orig. proceeding). To show good cause for the examination, a movant must:

6

(1) show that the requested examination is relevant to issues in controversy and will produce or likely lead to relevant evidence, (2) establish a reasonable nexus between the requested examination and the condition in controversy, and (3) demonstrate that the desired information cannot be obtained by less intrusive means.

*In re H.E.B.*, 492 S.W.3d at 303.

"The purpose of Rule 204.1's good-cause requirement is to balance the movant's right to a fair trial and the other party's right to privacy." *Id.* Once the trial court determines that good cause for an examination exists, it "retains discretion to place reasonable limits on [the nonmovant's] interview and tests," and it must exercise that discretion by considering the fair-trial standard. *In re Offshore Marine Contractors, Inc.*, 496 S.W.3d 796, 803 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). The fair-trial standard implicates the third good-cause factor, "less intrusive means," because "[t]he desired information is not required to obtain a fair trial when a party may obtain the same information by deposing the opposing party's physicians or relying on existing expert reports." *Id.* at 800 (analyzing "detailed explanation" provided by movant's expert of why he could not confidently rely on plaintiff's previous examinations and medical records).

Here, although Evans agrees that her mental condition is in controversy and acknowledges that the Johnston parties have demonstrated good cause for ordering a mental examination in principle, she contends that the trial court abused its discretion by not specifying in the order the universe of proposed tests that Ticknor may administer during his examination of her and the protocol for testing. *See* Tex. R. Civ. P. 204.1(d) (requiring order for physical or mental examination to be in writing and to "specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made"). Evans argues

that, without this information about the scope of the examination, she is being denied the right to meaningfully object to the relevancy and potential harm of the tests in violation of the fair-trial standard and that the Johnston parties have not demonstrated good cause for the particular examination that they are requesting. As Evans points out, her counsel will not be present during the examination and it will not be video recorded, so Evans, who is not a legal or medical expert, will have no way to recognize inappropriate testing or the ability to raise appropriate objections to the trial court before potentially being subjected to inappropriate psychiatric testing that might unnecessarily invade her right to privacy.

At the hearing on the motion, Ticknor informed the trial court as follows:

> I will bring with me, obviously, a set of — a variety of tests, but I won't know until I actually start the interview what test may be most indicated.
>
> It is my opinion that some of the tests — in fact, most of the tests she's been administered [by her treating psychological professionals] are self-rating scales, meaning that they are a listing of the patient's self-reports of subjective symptoms. So until I have the opportunity to interview her, I may or may not administer some more objective validated tests. And, again, there are half a dozen of those. But I won't know until I see her and begin the interview, collect some additional information, what will be the best test to administer.

The Johnston parties' counsel argued at the hearing that Ticknor planned to use some standardized testing and would prefer to keep the specific tests undisclosed so as not to permit Evans an opportunity to prepare in advance for the questions, and the trial court subsequently expressed concern that prior identification of the tests might enable Evans to prepare for them. However, Ticknor himself did not provide any explanation or information to the trial court either in his affidavit or at the hearing to support counsel's argument that Evans might be able to prepare for the tests and that this was the reason he did not want to disclose in advance the

8

possible tests. Ticknor also did not disagree when Evans's counsel pointed out that he was sure Ticknor "would agree based upon his experience that standardized, computer-scored psychological testing has internal validity scales to determine whether or not someone is attempting to manipulate the data. So knowing what the test is and being able to manipulate it are two entire different things." Ticknor's statements at the hearing indicate that he knows exactly what tests he intends to bring with him, but he will not be sure which, if any, he will administer until after he interviews Evans. When the trial court was considering the issue of whether Ticknor or a third party would be interpreting and evaluating the testing results, Ticknor replied that if he administered self-rating scales to Evans, he would not outsource them, but if he administered specific personality inventories, he would consult with one of three clinical psychologists (whom he identified by name) to interpret specific test results because each psychologist has his own strengths for particular tests. Furthermore, although Ticknor opined at the hearing that it appeared to him that most of the tests that Evans's treating professionals had administered were self-rating scales, he never indicated either in his affidavit or at the hearing whether he had reviewed any of Evans's test results from her mental-health treatment before the accident, and if he had, why that testing was insufficient.

In a recent case, the Tenth Court of Appeals concluded that a trial court's order that was more specific than the order at issue here was nevertheless too broad in scope. *See In re Estabrook*, No. 10-20-00175-CV, 2020 WL 6192923, at *4 (Tex. App.—Waco Oct. 21, 2020, orig. proceeding) (mem. op.) (holding scope of order was too broad when order failed to limit examination to mental conditions put in controversy by party). That case involved a personal-injury lawsuit for negligence and medical battery brought after Estabrook was subjected to a medical procedure that she expressly refused and refused to sign a hospital consent form to

9

allow. *Id.* at *1. Because she alleged past and future pain and mental anguish, the trial court required her to submit to a neuropsychological exam. *Id.* The order stated: "The neuropsychological examination will consist of an interview and administration of tests which are standardized and interpreted following standard procedures. The tests will measure the following domains: sensation, movement, language, memory, psychomotor speed, visual perception, intelligence, executive function, validity, and mental health." *Id.* at *3. The court granted mandamus relief from the order, holding that the trial court abused its discretion by failing to limit the examination to depression and PTSD, which were the mental conditions Estabrook put in controversy. *Id.* at *4 ("Texas courts have held that the failure to place any limitations on the scope of the mental examination, especially to the mental conditions specifically in controversy in the matter, constitutes an abuse of discretion."); *see also, e.g.*, *In re Sharaf*, No. 03-18-00671-CV, 2018 WL 5796977, at *3 (Tex. App.—Austin Nov. 5, 2018, orig. proceeding) (mem. op.) (concluding trial court abused its discretion because order did not "limit the scope of the mental examination to the identified testing or interview or place other parameters on the examination, such as limiting the testing to standardized testing or placing a limitation on the duration of the testing and interview").

The trial court's order here suffers from a similar deficiency. The order for the mental examination, which may be as long as five hours, does not limit the scope to the only conditions placed in controversy by Evans—PTSD, anxiety disorder, panic disorder, and major depressive disorder. *See id.* Instead, the order broadly provides that "the examination may also include having the Plaintiff complete standardized testing (using paper and pencil/pen) of the form that is typically and routinely used to assess an individual's mental health and/or mental diagnosis *for conditions such as: depression, PTSD, etc.*" (Emphasis added.) The broad

10

language of "conditions such as," followed by "etc.," combined with the lack of identification of the possible tests that Ticknor may administer, makes the order inadequately specific.

The Johnston parties have the burden to demonstrate good cause for the specific parameters of the examination that they seek to compel. *See In re H.E.B.*, 492 S.W.3d at 303 (requiring movant to show that its right to fair trial warrants intrusion on nonmovant's right to privacy); *see also, e.g.*, *In re Sharaf*, 2018 WL 5796977, at *3 (noting that trial court must consider fair-trial standard when exercising its discretion to set specific limits on examination's scope as required by Rule 204.1 and citing with approval federal cases requiring specific limits on scope). Under the circumstances present in this case, by failing to identify even the possible tests that Ticknor may administer during Evans's examination, or alternatively, to provide some diagnostic explanation to support counsel's argument in support of not disclosing the possible tests, the Johnston parties failed to (1) show that the "paper and pencil tests" that Ticknor may administer are relevant to issues in controversy and will produce or likely lead to relevant evidence, (2) establish a reasonable nexus between the possible tests and the condition in controversy, and (3) demonstrate that the desired information cannot be obtained by less intrusive means. *See id.* The trial court lacked the information it needed to be able to comply with the Rule's requirement that the order specify the scope of the examination. *See Ornelas v. Southern Tire Mart, LLC*, 292 F.R.D. 388, 398 (S.D. Tex. 2013) ("Parties seeking a court-ordered mental or physical examination should therefore provide the necessary details to the court, or they otherwise risk denial of their motions solely on the grounds that the court cannot comply with this provision of the Rule [requiring that the order specify the scope of the

11

examination].").[2]  In particular, the trial court heard no explanation from the Johnston parties or Ticknor about why the possible tests will provide him with information that cannot be obtained by less intrusive means.  Although there may be cases where there are reasons not to require the movant's psychiatrist to identify the possible universe of tests that may be given to the nonmovant, on the record before us in this case, there was no evidence before the trial court to support counsel's argument.  *Compare In re Offshore Marine*, 496 S.W.3d at 803 ("While the trial court abused its discretion in not permitting any interview or testing by [the defense expert], it does not necessarily follow that OMC is allowed the full panoply of tests it seeks.  The trial court retains discretion to place reasonable limits on [the expert's] interview and tests . . . . , which must be exercised by considering the fair-trial standard."), *with, e.g.*, *In re Kirby Inland Marine, LP*, No. 01-18-00383-CV, 2018 WL 3468476, at *3-4 (Tex. App.—Houston [1st Dist.] July 18, 2018, orig. proceeding) (mem. op.) (granting mandamus relief when trial court had limited defense expert's examination to two-hour period and required advance disclosure of tests to be administered because defense expert had provided extensive explanation articulating his need for additional time, his issues with prior tests administered by plaintiff's expert, and his reasoning for why type of tests at issue in case should not be disclosed in advance).  Accordingly, we conclude that the trial court abused its discretion by failing to adequately consider the good-cause factors, as well as the fair-trial standard incorporated into those factors, when it compelled Evans to undergo the particular examination and battery of possible tests

---

[2] *See* Fed. R. Civ. P. 35(a)(2) (stating that order requiring party to submit to physical or mental examination "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it"); *see also, e.g.*, *Coates v. Whittington*, 758 S.W.2d 749, 751 (Tex. 1988) (orig. proceeding) (explaining that predecessor rule to Rule 204.1 was derived from Federal Rule of Civil Procedure 35 and that "[f]ederal courts' construction of Rule 35 is thus helpful to an analysis of [the Texas Rule]").

proposed here without adequately describing the scope of the examination by limiting it to the specific conditions put in controversy by Evans and identifying the possible tests to be administered by Ticknor.

**No adequate remedy by appeal**

Having concluded that the trial court abused its discretion by ordering the mental examination without adequate consideration of the good-cause factors and the fair-trial standard, we further conclude that an appeal of the trial court's order after trial would not provide an adequate remedy. *See In re Reyes*, No. 02-20-00071-CV, 2020 WL 1294923, at *l (Tex. App.—Fort Worth Mar. 19, 2020, orig. proceeding) (mem. op.) (concluding appeal is inadequate remedy for order that does not comply with Rule 204.1's requirements); *see also Walker*, 827 S.W.2d at 839-40 (holding appellate remedy is inadequate when appellate court could not cure discovery error, especially when trial court erroneously orders disclosure that may materially affect rights of aggrieved party). The current order, which does not adequately specify the scope of the examination as required by Rule 204.1 and denies Evans the right to object to potentially improper tests before their administration, implicates Evans's privacy rights and violates the fair-trial standard. *See In re Estabrook*, 2020 WL 6192923, at *4. Accordingly, we sustain Evans's sole issue.

## CONCLUSION

Having found that the trial court abused its discretion and that Evans has no adequate remedy by appeal, we conditionally grant in part Evans's petition for writ of

13

mandamus.[3]  We are confident the trial court will modify its November 3, 2020 order granting the Johnston parties' motion for mental examination in accordance with this opinion.  The writ will issue only if the trial court fails to comply with this opinion.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Kelly

Filed:   January 28, 2021

---

[3] Evans requested that this Court order the trial court to set aside the examination order. We grant in part her petition for writ of mandamus because we instead order the trial court to modify its order.