# Supreme Court of Texas

No. 21-0886

In re Auburn Creek Limited Partnership; The Lynd Company; Lynd Family Limited Partnership; and Forty Four Eleven, LLC, *Relators*

On Petition for Writ of Mandamus

**PER CURIAM**

Justice Lehrmann did not participate in this decision.

This mandamus proceeding concerns a motion to compel a medical examination under Texas Rule of Civil Procedure 204.1. Because the motion was filed before the close of discovery and the trial court clearly abused its discretion in concluding that relators did not establish good cause for the examination, we conditionally grant relief.

Real parties in interest, six members of the Pau family, sued relators, Auburn Creek Limited Partnership, the Lynd Family Limited Partnership, The Lynd Company, and Forty Four Eleven, LLC (collectively, Auburn Creek). The Paus seek $33 million in economic damages, plus past and future non-economic damages, that they allege were caused by carbon-monoxide exposure in an apartment they leased from Auburn Creek. The Paus designated Dr. Nadia Webb as a medical

expert. Dr. Webb evaluated members of the Pau family between October 2018 and December 2020.

Auburn Creek designated Dr. Gilbert Martinez as its medical expert. Dr. Martinez produced a preliminary report for each member of the Pau family. These reports were based solely on medical records, as Dr. Martinez had not personally examined any member of the family.

On June 1, 2021, Auburn Creek filed a Rule 204.1 motion to compel a neuropsychological exam for each of the Paus. With the motion, Auburn Creek included an affidavit from Dr. Martinez. In the affidavit, Dr. Martinez averred that he could not ethically express a medical opinion based solely on records. He included a list of fifty-three possible tests for the Pau adults and twenty-three tests for the children. Dr. Martinez proposed to begin with a 90- to 120-minute clinical interview, followed by tests from the provided list for up to eight hours per family member. He testified that he could not be certain exactly which tests would be performed until he met with the patients. On June 6, the trial court denied the motion without prejudice, concluding that the scope of the exams was not sufficiently circumscribed.[1]

On July 15, Auburn Creek filed a motion for reconsideration of the motion to compel, attaching a supplemental affidavit from Dr. Martinez. Dr. Martinez reduced the list of possible tests from fifty-three to forty-four for the adults and from twenty-three to twenty-two for the

---

[1] In Bexar County Civil District Courts, the local rules establish a central-docketing system that allows for more than one judge to preside over discovery hearings and other matters that do not require witnesses. The relevant orders in this case were signed by three different judges.

2

children. Dr. Martinez also testified that he could not be more specific about which tests might be performed because that could bias the patients' results and introduce error.

Auburn Creek also filed a motion for continuance, which was granted. The discovery deadline was set for September 7, with limited exceptions not related to the neuropsychological exams at issue here.

The trial court heard the motion to reconsider on September 2. The court denied the motion, concluding that the testing—which would take up to ten hours per family member—would necessarily extend beyond the September 7 discovery deadline. The court also ruled that Dr. Martinez's proposed list of tests still failed to satisfy Rule 204.1's scope requirements.

The Paus subsequently moved to strike Dr. Martinez as an expert for Auburn Creek, and the court granted the motion in part. The court ordered that Dr. Martinez could not opine on the nature and extent of the Paus' injuries, at least in part because Auburn Creek admitted that Dr. Martinez could not render such an opinion without conducting his own exam. The court of appeals denied Auburn Creek's request for mandamus relief in a nonsubstantive opinion. ___ S.W.3d ___, 2021 WL 4556062, at *1 (Tex. App.—San Antonio Oct. 6, 2021, orig. proceeding).

Auburn Creek now seeks mandamus relief from this Court. Because we agree with Auburn Creek that its Rule 204.1 motion was timely and the trial court clearly abused its discretion by concluding that Auburn Creek had not shown good cause for the exams, we conditionally grant relief.

Mandamus is an extraordinary remedy that is granted only when the relator shows that the trial court clearly abused its discretion and no adequate appellate remedy exists. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004).

When a trial court fails "to analyze or apply the law correctly," it has clearly abused its discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Essentially, the trial court has no discretion in determining the law or applying the law to the facts. *Id.*

Here, the trial court failed to apply Rule 204.1 correctly to the facts.

The parties dispute (1) whether the motion was timely and (2) whether Auburn Creek showed good cause for the exams. We address each dispute in turn.

Regarding timeliness, the Pau family argues that the motion to reconsider the denial of the motion to compel was not timely and that Auburn Creek generally was not diligent in seeking the exam. The trial court did not hear the motion to reconsider until September 3, so the Paus assert that the court did not abuse its discretion because the exams could not have been completed by the September 7 discovery deadline. We disagree. Auburn Creek did timely seek the exams, and the delay in hearing the motion to reconsider was outside of Auburn Creek's control.

A party must move to compel an examination "no later than 30 days before the end of any applicable discovery period." TEX. R. CIV. P. 204.1(a). Given the September 7 discovery deadline, the last day to file a Rule 204.1 motion was August 8. Auburn Creek filed its initial motion to compel the exams on June 1. The trial court denied the motion but

4

invited Auburn Creek to refile. Auburn Creek refiled on July 15, again prior to the Rule 204.1 deadline. Thus, Auburn Creek met the deadline set by the Rule.

Although the trial court did not hold a hearing on this motion to reconsider until September 3, the delay was due to factors outside of Auburn Creek's control. The hearing was moved due to scheduling conflicts of the Paus' counsel and the trial court's availability, as well as a period of delay while Auburn Creek's counsel recovered from COVID. To the extent that the trial court denied the motion to reconsider based on timeliness, that was a clear abuse of discretion.

Turning to the merits of the motion, we conclude that Auburn Creek satisfied Rule 204.1's requirements. A trial court "may" compel examination "only for good cause shown" and "when the mental or physical condition . . . of a party . . . is in controversy." TEX. R. CIV. P. 204.1(c)(1). Although the rule uses the permissive "may," the trial court does not have unfettered discretion to deny requests for exams. *Cf. Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011). To be sure, Rule 204.1 does not grant an automatic right to an exam. *In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859, 866 (Tex. App.—Dallas 2014, orig. proceeding). But when the trial court reasonably could have reached only one conclusion, "the discretion vested in the court is for all practical purposes destroyed." *Id.*; *see Walker*, 827 S.W.2d at 840.

Here, the trial court determined that the Paus' neuropsychological conditions had been placed in controversy. Thus, the only disputed issue is whether Auburn Creek showed good cause.

5

The purpose of the rule's "good-cause requirement is to balance the movant's right to a fair trial and the other party's right to privacy." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 303 (Tex. 2016). To establish good cause, the movant must show that (1) the examination is relevant to the issue in controversy and is likely to lead to relevant evidence, (2) there is a reasonable nexus between the examination and the condition in controversy, and (3) the desired information cannot be obtained by less intrusive means. *Id.* Auburn Creek's original motion and its motion for reconsideration met all three requirements.

When the existence, extent, and cause of an injury are in controversy, an exam intended to glean information regarding those issues will satisfy the relevance requirement. *See id.* Here, Dr. Martinez proposed a battery of tests to evaluate the Paus' claims of brain injuries due to carbon-monoxide exposure, including the existence, cause, nature, extent, and proper treatment of any injuries. The Paus' expert, Dr. Webb, had conducted twenty-seven different tests on one of the minor plaintiffs to assess cognitive abilities, language, attention, and memory. Auburn Creek seeks a similar opportunity for Dr. Martinez to evaluate the claimed mental injuries and to develop facts that might contradict Dr. Webb's opinion. Dr. Martinez also testified that additional testing is necessary because Dr. Webb's tests "did not allow for sufficiently detailed examination of performance validity, emotional functioning, and memory which would be needed to understand and rule out all potential causes of the [Paus'] reported memory deficits." This record shows that Dr. Martinez's tests will likely lead to the discovery of relevant evidence.

Turning to reasonable nexus, a movant must provide more than conclusory allegations and show more than mere relevance to the case. *Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988); *see Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Rather, there must be evidence that the requested examination "directly relates to the condition in controversy." *H.E.B.*, 492 S.W.3d at 303. The parties dispute whether Dr. Martinez sufficiently limited the scope of the examinations, and the trial court denied both motions based on this requirement, at least in part.

Dr. Martinez testified that the neuropsychological exams would assess the claimed injuries, including memory impairment, language difficulties, anxiety, depression, and processing deficiencies for each of the six plaintiffs. This wide variety of disorders and symptoms is listed in Dr. Webb's report on the Paus' behalf. Although Dr. Martinez provided a lengthy list of possible tests, many of which were similar to the ones Dr. Webb performed, the Paus did not object to any particular test. Dr. Martinez testified that he could not be certain which tests would be appropriate until he interacts with each plaintiff in a clinical interview and makes first-hand behavioral observations. Dr. Martinez also identified the risk of bias and error if the patients are aware of the exact list of tests to be performed.[2] This evidence shows a reasonable nexus between the proposed examinations and the conditions at issue.

---

[2] The Paus' reliance on *In re Estabrook* ignores these facts. No. 10-20-00175-CV, 2020 WL 6192923 (Tex. App.—Waco Oct. 21, 2020, orig. proceeding). In *Estabrook*, a single plaintiff alleged symptoms limited to depression and PTSD. *Id.* at *4. Here, the *six* Pau family members asserted a

7

Finally, the movant must show that the exam would be the least intrusive means of discovering the desired information "in light of the fair trial standard." *In re Offshore Marine Contractors, Inc.*, 496 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). This requirement focuses on the importance of the discovery sought and the ability to find it elsewhere. In particular, courts should consider whether the exam is likely to reveal information necessary to assess the complained-of injuries beyond what could be obtained from reviewing any medical records available to the expert. *See H.E.B.*, 492 S.W.3d at 303-04.

In *H.E.B.*, the defendant's expert explained why a treating doctor was in a better position than a records-review doctor to examine and opine on the plaintiff's alleged injuries. *See id.* The plaintiff intended to prove causation and damages through expert testimony from doctors who had examined the plaintiff. *Id.* We concluded that the results of the defendant's requested exam went to the heart of its defense strategy and that requiring the defendant's expert to testify at trial without the exam would place him at a distinct disadvantage because it would allow the plaintiff to call into question his credibility in front of the jury. *Id.*

Similarly, Dr. Martinez addressed in his affidavit the need to examine the Paus before opining on the nature, cause, and extent of their injuries. The Paus' expert, Dr. Webb, personally examined them and will testify at trial about those exams. Dr. Martinez explained that a deposition of Dr. Webb conducted by a lawyer would be insufficient to

---

much broader list of conditions. Further, the proposed orders in this case are more detailed than the proposal in *Estabrook*.

obtain the information required to rebut or respond to Dr. Webb's neuropsychological opinions. And without conducting his own exams, Dr. Martinez predicted that he would likely be barred from testifying on some issues or subjected to critical cross-examination for lack of first-hand knowledge. Indeed, the trial court later struck Dr. Martinez's testimony in part, preventing him from testifying about the Paus' injuries without conducting his own exam. In other words, absent an exam, Auburn Creek would lose the battle of the experts. *See In re Redbird Trails Apartments*, No. 05-20-00284-CV, 2020 WL 3445811, at *3 (Tex. App.—Dallas June 24, 2020, orig. proceeding).

For these reasons, Auburn Creek has shown good cause to compel a medical examination of the opposing parties. Because the trial court reasonably could have reached only one conclusion on these facts, it clearly abused its discretion in denying the motions.

"Notwithstanding that abuse of discretion, we will not grant mandamus relief if there is a clear and adequate remedy at law, such as a normal appeal." *H.E.B.*, 492 S.W.3d at 304 (internal quotation marks omitted). We conduct a benefits-and-detriments analysis to determine whether mandamus relief is appropriate. *In re McAllen Med. Ctr.*, 275 S.W.3d 458, 464 (Tex. 2008). Just as we did in *H.E.B.*, we conclude that mandamus relief is appropriate here. *See* 492 S.W.3d at 304-05. Auburn Creek's defense largely turns on its challenges regarding the cause, nature, and extent of the Paus' brain injuries, and a fair resolution of those challenges at trial depends on competing expert testimony that Auburn Creek has not been given an opportunity to develop. Because Auburn Creek's ability to present a viable defense has

9

been severely compromised, it lacks an adequate remedy by appeal. *McAllen Med. Ctr.*, 275 S.W.3d at 468. The orders denying the requested exams should be withdrawn.

Finally, Auburn Creek also challenges the trial court's order partially striking Dr. Martinez as an expert witness on the ground that he did not offer any opinions in his report. Auburn Creek conceded that Dr. Martinez would not be able to opine on the nature and cause of the injuries without an exam. Because the erroneous denial of an examination affected the trial court's ruling on the motion to strike, that ruling should be reconsidered.

Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant Auburn Creek's petition for writ of mandamus. We direct the trial court to withdraw its orders denying the motion to compel and partially striking the expert and to sign an order requiring the Paus to submit to the examination proposed in Auburn Creek's motion for reconsideration on reasonable terms and conditions.[3] Our writ will issue only if the trial court does not comply.

**OPINION DELIVERED:** December 2, 2022

---

[3] The trial court should address in the first instance the Paus' requests to have a parent present when the minor plaintiffs are examined and to have an interpreter present when necessary. Auburn Creek represents that it does not oppose these requests.